TEXAS & PACIFIC RAILWAY COMPANY v. M. J. HUDMAN.

No. 1292.

1. **Railway Company—Damages for Injuries Causing Death—Charge of Court.**—See the opinion for an approved charge in an action against a railway company for injuries occasioned to one shipping stock over the road, while walking across an unguarded trestle bridge.

2. **Same—Duty of Company to Shipper of Live Stock.**—A railway company owes to one shipping stock over its road the duty of exercising proper diligence to provide him with safe approaches to all parts of its station grounds where the reasonable prosecution of his business may require him to go.

3. **Same—Diligence—Charge of Court.**—A submission by the court in its charge, whether the bridge where deceased was injured was in an unsafe and dangerous condition, imports the question whether the defendant company had failed to exercise reasonable diligence to secure its safe condition.

4. **Same—Contributory Negligence.**—If it was reasonably proper for deceased in attending to his stock to have gone to the stock pens, thus necessitating his crossing the trestle bridge, the fact that it was not absolutely necessary for him to have gone there will not render him guilty of contributory negligence in doing so.

5. **Verdict—Apportionment of Damages.**—The jury rendered a verdict against the defendant company for $8000 damages, and of this amount apportioned $2000 to the widow of the deceased and $6000 to his four minor children, these being all the parties entitled to share in the judgment. *Held,* that the failure to apportion the $6000 as between the children was not material error.

6. **Damages—Verdict Not Excessive.**—Where the deceased was 32 years old, healthy and industrious, and earning more than sufficient to support his family, a verdict of $6000 for his four children, the oldest of whom was 12 years old, and the youngest 4, is not excessive.

APPEAL from Tarrant.   Tried below before Hon., R. E. BECKHAM.

*Stedman & Thompson,* for appellant.—1. The court erred in that portion of its charge wherein it instructed the jury, that defendant would be responsible for the death of W. M. Hudman (other things

submitted concurring) if they believed from the evidence "that the bridge where said Hudman was injured was one where passengers or those in charge of stock would ordinarily go while at defendant's station;" because the doctrine that a railway company is liable for injuries occurring at a place to which passengers or those in charge of stock would ordinarily go while at the company's station, finds no support in law in the absence of evidence tending to show an invitation, express or implied, to such persons to go to said place. Oil Co. v. Morton, 70 Texas, 400; Sweeney v. Railway, 92 Mass., 368; Railway v. Godfrey, 71 Ill., 500; Larmore v. Iron Co., 101 N. Y., 391; Railway v. Gilmore, 62 Texas, 391; Railway v. Conroe, 72 Texas, 79; Byrne v. Railway, 104 N. Y., 366; Barry v. Railway, 92 N. Y., 289; Taylor v. Railway, 113 Pa. St., 162.

2. The court erred in charging that defendant would be responsible for the death of Hudman (other things submitted concurring) if the jury believed from the evidence "that the bridge where said Hudman was injured was one where passengers or those in charge of stock would ordinarily go while at defendant's station;" because the facts did not show that he had gone to the place on account of some reasonable necessity arising out of and connected with his character as a shipper of stock. Blanchard v. Railway, 126 Ill., 416; Railway v. Hetherington, 83 Ill., 510; Sweeney v. Railway, 10 Allen (Mass.), 368; Railway v. Meadows, 10 South. Rep. (Ala.), 141; Wright v. Railway, 28 Am. and Eng. Ry. Cases, 652.

3. The court erred in charging the jury, that if they believed from the evidence that the bridge, at the time of the alleged injury, was in an unsafe and dangerous condition for ordinary use by passengers and persons in charge of stock, defendant would be liable for the death of said Hudman, because it imposes liability upon defendant irrespective of the degree of care it should have exercised under the circumstances. Railway v. Huffman, 83 Texas, 290; Railway v. Wells, 81 Texas, 685; 2 Shearm. & Redf. on Neg., sec. 510.

4. The railway company owes to a mere licensee no duty of active care, and when he enters the premises by virtue of a bare license, he assumes the risk incident to the condition in which the premises are kept. Oil Co. v. Morton, 70 Texas, 400; Byrne v. Railway, 104 N. Y., 366; Barry v. Railway, 92 N. Y., 289; Sutton v. Railway, 66 N. Y., 243; Vanderbeck v. Henry, 34 N. J. Law, 467; Sweeney v. Railway, 10 Allen (Mass.), 368; Railway v. Hetherington, 83 Ill., 510; Railway v. Godfrey, 71 Ill., 500.

*Capps & Cantey*, for appellee.—The court by its charge directly limited plaintiff's right to recover against defendant to the proposition, "was the bridge from which deceased fell a place where persons in charge of stock being shipped over defendant's road would probably, naturally, or ordinarily go?" Stewart v. Railway, 53 Texas, 294, and authorities cited by appellant.

No evidence having been introduced showing any care on the part of appellant to protect the deceased, or to warn him of the dangerous condition of the bridge, it was not error to fail to charge on the degree of care that defendant would be required to use to protect persons from its dangerous condition.

If the deceased, being in charge of the stock, would ordinarily, reasonably, and naturally go to the place where he was injured in an effort to care for the stock or board his train, then (other things submitted concurring) the appellant was liable, and the court properly refused to submit the charges requested by appellant.

TARLTON, CHIEF JUSTICE.—This appeal is from a verdict and judgment in the sum of $8000, recovered as damages for the negligent killing by one of appellant's engines of W. M. Hudman, on the night of January 9, 1891. Of the amount awarded, the sum of $2000 was apportioned to Mrs. M. J. Hudman, the widow, and the sum of $6000 to his surviving four minor children, represented by the widow as next friend. To his mother, Mrs. S. M. Hudman, who was also a plaintiff, nothing was awarded.

On the night in question, the deceased, as a passenger on one of defendant railway company's stock trains, and in charge of several carloads of cattle en route from Albany, Texas, to Chicago, Illinois, had, in company with A. M. Garrett and J. D. Brouthers, similarly engaged, reached the city of Fort Worth. Fort Worth was the end of the division, and it was here necessary that they should change cabooses.

The depot of the appellant is north of its track, which courses east and west. East of the depot, and south of the track, are the stockyards of the company. Intervening between the depot and the stockyards, a street courses north and south. Across this street the company had constructed a trestle bridge some twenty feet above the excavation caused by the opening and construction of the street.

About 11 o'clock at night, it being quite dark and rainy, Hudman, with his companions, was walking from the depot of the company to the stockyards, where the train for the transportation of his stock was being made up, for the purpose of getting upon the caboose to continue his journey. In crossing the bridge, the three encountered an engine of the appellant. They stepped aside, one on the right and the remaining two on the left of the engine, as it passed, so as to avoid it. The bridge was without guards, and as a consequence Hudman fell into the excavation, sustaining injuries from which in a short time he died. The verdict of the jury establishes the facts, that in the construction of this bridge the company was guilty of negligence, and that the deceased was not guilty of contributory negligence in seeking to pass over the bridge for the purpose of reaching the stockpens. It appears from the evidence that the route adopted by Hudman was the only practicable and reasonable one for a person situated as he was to

reach from the depot the stockpens from which his stock were to be transported.

*Conclusions of Law.*—It is deemed proper, in view of the several assignments of error, to insert the charge of the court, as follows:

"If the jury believe from the evidence that the plaintiff's husband, W. M. Hudman, at the time of his injury, was in charge of cattle being transported over the defendant's road, and if they further believe from the evidence that the bridge where said W. M. Hudman was injured was one where passengers, or those in charge of stock, would ordinarily go while at defendant's station, and if they further believe that said bridge was at the time of the alleged injury in an unsafe and dangerous condition for such ordinary use, and that by reason of such unsafe condition the plaintiff's said husband, without any fault or negligence on his part, fell from said bridge and was killed, they should find for the plaintiff.

"Unless you believe from the evidence that the bridge from which it is claimed the deceased fell was so situated and constructed as that passengers and persons in charge of cattle being shipped over defendant's road would probably and naturally go while so in charge of stock, and, further, that at the time of the alleged injury said bridge was in an unsafe and dangerous condition, and unless you believe that the said W. M. Hudman fell from said bridge, you should find for the defendant.

"You are further instructed, that though you may believe from the evidence that the defendant company was negligent as alleged, if you should so find, yet if you should further believe from the evidence that said W. M. Hudman, in going upon said bridge at the time and under the circumstances, failed to exercise that care which a person of ordinary prudence would have done, and that such want of care on his part contributed to his injury, you should find for the defendant.

"If under the foregoing instructions you find for the plaintiff, you will in that event award her such an amount as you may believe proportioned to the injury sustained, the proper measure of such damage being the pecuniary loss sustained by her; and if you find for plaintiff you will say in your verdict how much you award to the plaintiff, M. J. Hudman, how much to the children of plaintiff, and how much to Mrs. S. M. Hudman, the mother of the deceased."

The court also, among other requested instructions, charged the jury that it was the duty of plaintiff to make out her case by a preponderance of the evidence.

1. We think that the testimony sustained the action of the court in submitting to the jury the question, whether "the bridge where Hudman was injured was one where passengers, or those in charge of stock, would ordinarily go while at defendant's station." To say nothing about the evidence of the witnesses on this point, which was to the effect that about the only way to reach the stockpens was across the

trestle or the bridge, the situation of the premises indicates that such was the case. We therefore overrule the appellant's assignment of error first urged.

2. The fourth, ninth, tenth, and eleventh assignments of error proceed upon the theory that the deceased is to be regarded, under the facts of this case, as occupying the attitude of a trespasser, or at best, of a mere licensee, upon the premises of the defendant.

We dissent from this view. The evidence, on the contrary, shows indisputably that the deceased was at the bridge by lawful right, engaged in the prosecution of business of "common interest and mutual advantage," growing out of a contractual relation existing between himself and appellant company. Under such circumstances, we think an invitation to him should be inferred. He was not at the place of the catastrophe as a stranger or a mere licensee. The company owed him the duty of exercising proper diligence to provide him with proper approaches to all portions of its station grounds where the reasonable prosecution of his business required that he should go. Stewart v. Railway, 53 Texas, 289; Oil Co. v. Morton, 70 Texas, 400.

Here the testimony shows that the train on which he was to embark was to be made up at the stockpens, which he was seeking to reach over a bridge which the company had improperly and negligently guarded.

Nor do we agree with the contention of appellant asserted in its fifth assignment of error, that the deceased must have been under the necessity of going to the stockpens in order to reach the caboose on which he expected to leave. While it is true that he might, as the testimony shows, have waited at the yardmaster's office, some distance west, for the coming of the train, and have thence embarked, it was nevertheless entirely proper that he should seek the train at the stockpens where it was being made up; and this fact was sufficient to justify the clause of the court's charge complained of in this connection.

The seventh assignment of error, as read by us, complains of the omission of the court to submit, in connection with the clause of the charge already complained of, the question, whether the company had used proper care to render the bridge safe.

We are aware that the test of liability is not whether the premises have been placed in a safe condition, but whether the company has used due diligence to so maintain them. Railway v. Huffman, 83 Texas, 290; Railway v. Wells, 81 Texas, 685.

The correctness of every charge, however, must be tested according to the status of the evidence to which it is applied. Here the testimony showed that the appellant had constructed a bridge over an excavation twenty feet in depth, that it had failed to provide any guards to the bridge, and that it might reasonably expect that persons situated as was the deceased might seek to traverse the bridge under similar circumstances.

With reference to a person so situated, we think that the evidence showed a want of diligence on the part of the defendant to secure the safety of the bridge; and, under the circumstances, the submission by the court of the question, whether the bridge was in an unsafe and dangerous condition, implies the submission of the question, whether the defendant had failed to exercise reasonable diligence to secure its safe condition. In other words, the one condition was an equivalent of the other.

The undisputed testimony shows that the natural and reasonable way to the stockpens from the depot was across the bridge, that this was unprotected by guard rails and was unfurnished with lights, and that there was nothing, under such circumstances, to warn persons of the excavation, nor of its dangerous condition.

3. The charge of the court, in connection with the instruction granted at the request of appellant, substantially devolved upon the plaintiff the task of proving by a preponderance of the evidence, both that the deceased was not guilty of negligence, and that the railway company was negligent; and there was consequently no error in refusing the special instruction number 5 requested by the defendant in this connection.

4. In its twelfth assignment of error, complaint is made that the court erred in overruling appellant's motion for new trial, urged on the ground that the verdict "failed to assess the damages to each of the children of the deceased." The appellant invokes article 2909, Revised Statutes, requiring that, in cases of this character, the amount recovered "shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict."

It has been held, that a failure to make an apportionment of the damages among the parties entitled to share in the judgment is error. Railway v. Moore, 49 Texas, 31; Railway v. Le Gierse, 51 Texas, 199; Railway v. Spiker, 59 Texas, 435. It will be noted that in this case an apportionment was made, though it was not complete.

The object in the adoption of this statute was that there should be but one suit for the benefit of all the parties entitled to share in the judgment, and to avoid the inconvenience and hardship which would ensue from a nonjoinder of all the beneficiaries. Railway v. Henry, 75 Texas, 223; Railway v. Wilson, 85 Texas, 516.

Here the purpose of the statute has been fully met; for all possible beneficiaries in the judgment are parties to the proceeding, and the appellant is fully protected against any future litigation arising out of the death of Hudman. We fail, therefore, to perceive how it can in any way have been prejudiced by the erroneous omission of the jury to state in the verdict how much of the sum awarded should be apportioned to each of the children.

The error can not in the slightest degree prejudice the appellant; and this assignment is therefore overruled.

These remarks dispose of the several questions discussed in appellant's brief, and require an affirmance of the judgment, which is accordingly ordered.

*Affirmed.*

Delivered October 3, 1894.

### ON MOTION FOR REHEARING.

TARLTON, CHIEF JUSTICE.—In overruling this motion, we advert solely to the twelfth assignment of error, which suggests the propriety of the following additional remarks:

There were four children of W. M. Hudman, deceased. Of these it seems that the eldest, at the date of the trial, was 12 years old, and the youngest 4. The legal effect of the verdict apportioning to all of them $6000 is to require an appropriation to each of $1500. As the undisputed testimony shows that the deceased was about 32 years of age at the date of his death, that he was healthy, sober, industrious, and economical, and accumulating more than sufficient to provide his family with the means of living, we think that such an award could not be held excessive as to either of the children, and hence that the irregularity or incompleteness in the verdict could not be possibly detrimental to the defendant.

The motion is overruled.

*Motion overruled.*

Delivered November 28, 1894.