### FANNIE R. FLEMING ET AL. V. TEXAS LOAN AGENCY.

#### Decided June 2, 1900.

**1. Defective Building—Liability of Owner for Personal Injury.**

The ruling of the Supreme Court in this case, to the effect that a defect in a hotel building, such as a door opening out on an empty space below, is not such a structural defect as, per se, to render the owner, who had leased out the building, liable for injury to the guest of one owning another part of the building, and caused by the guest falling through the door at night, is followed herein. Loan Association v. Fleming, 92 Texas, 458.

**2. Same—Negligence—Lease—Implied Invitation.**

Defendant and one B. were owners in severalty of a building, B. occupying his part as a hotel, his guests using the water closets situated in defendant's part, and one of such guests was killed while going to the closets at night by falling through a door opening on a vacant space below, instead of on a balcony as had been intended in the plan of the building. Defendant had leased out its part of the building, and the lessee, a month prior to the accident, had abandoned the premises, but defendant had not accepted a surrender of the lease and had not taken actual possession, though it had collected some rents from subtenants and had made some repairs. Defendant had no knowledge that its water closets were used by B.'s guests, and there was no agreement between defendant and B. as to their use. Held, that there was no implied invitation to the guests on the part of defendant to use the water closets such as imposed on it the duty of providing safe approaches thereto, and no such injury shown as would render defendant liable for the consequences of the accident.

APPEAL from Bowie. Tried below before Hon. J. M. TALBOT.

*Chas. S. Todd, R. W. Rodgers,* and *William T. Hudgins,* for appellants.

*Frost, Neblett & Blanding,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—The Benefield Hotel, at Texarkana, Texas, was built by J. M. Benefield. It is a three-story brick building, and is located at the junction of Broad and Maple streets. The hotel offices, dining room and kitchen are located on the first floor, and on the eastern side of the building, next to Maple Street. The balance of the first floor, on the western side of the building, fronting on Broad Street, consists of storerooms. The following diagram shows the plan of the second floor:

It seems that Benefield mortgaged the property to the Texas Loan Agency to secure a debt owing by him to it. The loan agency brought suit to foreclose its mortgage, and the suit was settled by an agreed judgment by which the loan agency acquired title to all that part of the property lying west of the line A-B shown by the above diagram, including the storerooms on the first floor and the closets on the second floor.

Afterwards, on May 1, 1891, Benefield and the loan agency, by separate rental contracts, leased the property to D. McGraw for the term of five years. McGraw went into possession, and carried on a hotel business there until February 1, 1892, when he abandoned the property and left the country. Before leaving he saw Benefield and notified him of his intention, and Benefield resumed possession of his part of the building and soon afterwards began operating the same

as a hotel. He was not the agent of the loan agency. McGraw did not notify the latter of his abandonment of the leased premises, and never had any conversation or correspondence with any officer or agent of the loan agency concerning the matter, and the lease was never formally canceled.

The loan agency learned that McGraw had left the country almost as soon as it occurred, and S. D. Curtis, one of its agents, went to Texarkana at once to look into the situation. He found that McGraw had sublet the storerooms, one to Brunazzi and one to Dorrian. He did not disturb said tenants, or make any contract with them, and did not take actual possession of any part of the building. On March 1, 1892, Edgar Fleming, an attorney of St. Louis, Mo., became a guest of Benefield. On the night of March 2, 1892, Fleming, in obedience to a call of nature, arose from his bed and went to the closets. Either in going or returning he stepped or fell out of the door marked "C" in the above diagram, and received injuries which caused his death two days later. According to the original plan of the building, it was intended that a balcony should be constructed along the west side of the building, and that said door should open out on the same, but this was never done and the door opened out on vacant space. The door was provided with a bolt, lock and key, but on this occasion seems not to have been properly fastened.

The appellants are the wife and children of Edgar Fleming, and this suit was brought by them against appellee to recover damages on account of the death of the husband and father. A general demurrer to their petition was sustained, and they appealed to this court. The question involved was certified to the Supreme Court, and it was there held that the petition stated a good cause of action, and the judgment of the trial court was reversed and the cause remanded. Fleming v. Loan Agency, 87 Texas, 238; Fleming v. Loan Agency, 28 S. W. Rep., 388. The case was then tried, and the appellants recovered a judgment from which the appellee appealed. This judgment was affirmed by the Court of Civil Appeals of the Fourth District. Loan Agency v. Fleming, 18 Texas Civ. App., 668. A writ of error was granted by the Supreme Court, and that court reversed the judgment and remanded the cause for another trial. Loan Agency v. Fleming, 92 Texas, 458. The case was again tried in the District Court of Bowie County. On that trial, when the evidence was closed, the court instructed the jury to return a verdict for the appellee, which was accordingly done. This appeal is from a judgment entered on said verdict, and the only questions raised relate to the action of the court in giving the peremptory instruction aforesaid.

The pleadings of appellants present two theories as grounds for recovery. (1) That the door out of which Fleming fell was, as constructed, a structural defect of such a character as to make the owner of the property liable to any person suffering injury therefrom; (2) that appellee owned and was in possession of the property, and had invited the guests of Benefield to use its closets, and had failed to use the

proper degree of care to make safe the approaches to the closets, and that Fleming was injured by reason of its failure to use such care.

The first theory has been finally decided against appellants, and need not be considered here. Loan Agency v. Fleming, 92 Texas, 458.

The second theory involves five distinct propositions: (1) that Mc-Graw had surrendered his lease; (2) that the loan agency had accepted the surrender and resumed possession of the property; (3) that the loan agency had invited Benefield's guests to use its closets; (4) that it had negligently failed to use the proper degree of care to render safe the approaches to the closets; (5) that such negligence was the cause of Fleming's death.

If appellants can establish these propositions, they are entitled to recover, but their inability to establish any one of them is fatal to their cause. If the evidence adduced on either of these propositions was not sufficient to require the submission of that issue to the jury, then this judgment should be affirmed, otherwise it should be reversed.

1. The evidence shows that McGraw abandoned the property with the intention of never again resuming possession. We think that the facts are sufficient to warrant the conclusion that he intended to surrender the lease.

2. The evidence tends strongly to show that the loan agency had actual notice of McGraw's intention. It is, at least, sufficient to show that the loan agency had knowledge of facts from which it might reasonably be inferred that it was his intention to abandon his contract. Nothing relating to the matter ever passed between McGraw and the loan agency. There is evidence tending to show, and sufficient for that purpose, that Curtis, when he visited Texarkana, employed Estes & Watlington to collect, from the subtenants to whom McGraw had rented the storerooms, the rents due under their contracts with McGraw. These rents were in fact collected and turned over to the loan agency, the amounts so received by it being credited on McGraw's account. The first collections were made on the very day of the accident. After the accident, Estes & Watlington used a small part of the collections made by them in repairing the rented premises. The loan agency did not take actual possession of any part of the premises, and did not make any new contracts with the subtenants. Curtis refused to rent the property to Benefield, and declared that it was the intention of the loan agency to hold McGraw on his contract.

In October, after the accident in March, the loan agency resumed possession of the premises and rented same to Rooney Brothers. There is also evidence tending to show that in March, 1892, and after the accident, Estes & Watlington rented the storeroom formerly occupied by Dorrian to one of the Rooneys. The loan agency never demanded of McGraw that he carry out his contract. It is not shown that his whereabouts were known to the loan agency until some time after the accident. No express surrender of the lease by the tenant and acceptance thereof by the landlord is shown, but an implied surrender and acceptance are relied on. To prove acceptance of the surrender by the

loan agency, it was necessary to prove that it, by acts done, placed itself in a position where it could not legally demand · of McGraw that he carry out his contract. It was held by our Supreme Court on the former appeal that the collection of the rents and the making of the repairs were not acts inconsistent with the continuance of the lease. No other act of any importance is shown to have been done, and we conclude that, admitting the truth of all the evidence introduced by the appellants on this issue, it was ·not legally sufficient to authorize a finding that the loan agency accepted the surrender of the lease prior to the accident.

3.    The closets were used by Benefield's guests generally, but the loan agency never agreed that they could be so used. There were no other closets about the hotel, and these were open so that anyone desiring to do so could reach them, as shown by the diagram above. The loan agency never knew that the closets were being used until after the accident. The situation and construction of the premises was such that anyone about the hotel was likely to use the closets. We do not think that these facts are sufficient to show that the loan agency extended an implied invitation to Benefield's guests to use the closets. It could have prevented the use only by stopping ingress thereto, and this it was not bound to do under penalty of being held, otherwise, to owe a duty to those who voluntarily used its property for their own benefit. But, even if an implied invitation is presumed, it does not aid appellants' case. A gratuitous licensee accepts with the license the risk incident to the use of it, and the licensor owes him no duty except not to wantonly injure him, unless the licensor has expressly invited him on the premises and failed to warn him of a hidden danger or has allured him there by some device calculated to attract him to the spot. When one voluntarily uses the property of another without express invitation of the owner, and for his own benefit only, ·he assumes the risk incident to such use, and must take notice of whatever dangers exist. In avoidance of this principle it is insisted that the subtenants above mentioned .used the closets, and to do so were compelled to use Benefield's halls, and the use was therefore to the mutual benefit of both Benefield and the loan agency. The fact stated is true, but it is not shown that the right to the use of the closets resided in the subtenants. At any rate, there was certainly no agreement between Benefield and the loan agency on the subject, and, in view of the conclusions reached above, the use of Benefield's halls by the subtenants in reaching the closets could not be to the interest of the loan agency under the facts shown by the record. We conclude that the evidence was too slight on this issue to require its submission to the jury.

4.    Under the findings above, the loan agency owed no duty to Fleming. The defect that caused the injury not being manifestly dangerous, it was not bound to use ordinary care to prevent injury to anyone who might choose to use its property for his own benefit only, without its consent.

5.    It follows, therefore, that as the loan agency owed no duty to Fleming, the accident was not caused by its negligence, but was due

to the negligence of those who directed him there, and that the widow and orphans can not look to the loan agency for compensation for his untimely death. The loan agency had a right to own the property, which was not dangerous in itself; it had a right to lease the property without being responsible for the negligence of the lessees and the lease had never been canceled; the use of its closets was unauthorized, and those using them assumed the risks attending the use. The appellants may have suffered irreparable loss, but the appellee is not at fault and can not be made to respond.

We do not desire to be understood as commending an extension of the practice of directing the verdicts of juries, or of overruling or modifying in the least the long recognized and well established rule that when the evidence on material issues is conflicting, or not conclusive, the matter should be given to the jury for decision. We simply hold, as stated above, that appellants' evidence on material issues, conceding the truth thereof, was not legally sufficient to establish their theory on such issues, and that the court below did not err in giving the peremptory instruction. In fact, in view of the length to which this litigation has been protracted and the decision of our Supreme Court on the last appeal, we think the action of the trial court was eminently proper.

The judgment is affirmed.

*Affirmed.*