Each of the questions certified is answered in the negative.

---

## LESTER et al. v. ZINK.

(Court of Civil Appeals of Texas. Dallas. March 22, 1913. Rehearing Denied.)

1. LANDLORD AND TENANT (§ 53*)—TRANSFER OF REVERSION — EFFECT — RIGHTS OF PARTIES AS TO RENTS.

Rents payable out of the produce of land not accruing until after a conveyance of the land passed with the land to the purchaser, subject to all the equities affecting the payment of rent of which the purchaser had notice; so that a purchaser having no notice, other than the tenant's possession, of a parol lien by which the tenant might apply the rent to reimburse himself for money paid on an en-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

dorsement of a note for the landlord, became the owner of the rents.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 129–131, 134, 135; Dec. Dig. § 53.*]

2. **LANDLORD AND TENANT** (§ 210*)—**APPORTIONMENT OF RENT**—**TIME OF OCCUPATION.**

The general rule is that even an apportionment of rent is never made under the common law in reference to length of time of occupation, but, when the rent falls due, the owner of the reversion at that time is entitled to the entire sum.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 835–845; Dec. Dig. § 210.*]

3. **LANDLORD AND TENANT** (§ 53*) — **REAL PROPERTY**—**PURCHASER'S CLAIM TO RENT.**

Where the purchaser of the reversion of land in the possession of a tenant, without reservation of rent, inquired as to what the rental contract was, and knew that the tenant was to pay one-fourth of the cotton, but did not know of the existence of a parol lien by which the tenant might apply the rent to reimburse himself for money paid on an indorsement of the landlord's note, and the tenant on information that the purchaser was about to take the farm said nothing about such a lien, the purchaser was not estopped by his failure to further inquire as to the lien to claim the full rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 129–131, 134, 135; Dec. Dig. § 53.*]

Appeal from Kaufman County Court; Thos. R. Bond, Judge.

Action by J. B. Zink against Tom Lester and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Dashiell, Crumbaugh & Coon, of Terrell, for appellants. Joel R. Bond, of Terrell, for appellee.

TALBOT, J. The judgment of the lower court in this case at a former day of the present term was affirmed without a written opinion, and appellants have filed a motion for a rehearing. The suit was instituted by appellee, alleging that he was the owner of 125 acres of land, a part of the R. G. Cartwright survey, in Kaufman county, Tex.; that he bought same from J. H. Faulkner and wife, Minnie Faulkner, and received their warranty deed therefor, without knowledge of any lien and incumbrance against said property; that his purchase was made on or about January 1, 1911, and that on or about the same date he rented said land to Tom Lester for an agreed rental of one-third of all grain and one-fourth of all cotton raised thereon for the year 1911; that said Tom Lester subrented to W. S. Lester, one of the appellants herein, without the knowledge or consent of appellee, one-half of said land and premises, and both of appellants cultivated said land for the year 1911: that said appellants planted, raised, and gathered off of said premises for the year 1911 cotton and cotton seed of the value of $1,196.63, of which appellee was entitled to one-fourth as rents, and that he had a landlord's lien

on same to secure the payment of rents, and he prayed for judgment for one-fourth of the cotton and cotton seed, and for foreclosure of the landlord's lien. There was no contention by appellee, plaintiff in court below, that the corn and oats rent had not been paid. The defendants in the court below answered by general exception and general denial, and specially denied that they ever at any time rented any land and premises from plaintiff for the year 1911, or for any other time, and defendants answered, further, that on or about the 15th of November, 1910, one J. H. Faulkner was the owner and in possession of the tract of land on which said crops grew that are now in controversy, and that on said date said J. H. Faulkner rented said tract of land to defendants for the year 1911, and they agreed to pay as rents one-fourth of the cotton and one-third of the corn raised on said land during said year, and that they went into possession of said premises on or about January 1, 1911, and cultivated crops of cotton, corn, and oats thereon; that in the latter part of December, 1910, after the rental contract had been made, the said J. H. Faulkner came to them and requested them to go on his note for $200 to the First National Bank of Terrell, Tex., and represented to them that if they would go on his note to said bank, thereby enabling him, the said Faulkner, to procure said loan, that all rents due for the use and occupancy of said land, except the rents for corn and oats, might be applied by them as payment on said note to the said First National Bank of Terrell in the event that said J. H. Faulkner made default in the payment of said note at maturity, and that the said J. H. Faulkner did make a default in the payment of said note at maturity, and, in pursuance to the agreement between themselves and the said Faulkner, defendants took the rent money arising from the sale of cotton raised on said land for said year, and paid same to said bank to the amount of said note and interest, making a total of $220. The defendants further pleaded that on January 14, 1911, and subsequent to the date said Faulkner rented said land to defendants, and subsequent to the date defendants had signed said note for said Faulkner, said Faulkner and wife conveyed to J. B. Zink, plaintiff, and his wife, the lands which had heretofore been leased by defendants from said Faulkner; that defendants, at the time of said conveyance and sale of said land, were in possession of the same, and the plaintiff, Zink, took said land with knowledge of defendant's prior lease and contract for the year 1911, made with said Faulkner, for the use and occupancy of said land, and said agreement between themselves and said Faulkner to apply the rents from sales of cotton raised on said land to the payment of the said note, or as much as was neces-

sary, was entered into long before said conveyance to plaintiff. Defendants further pleaded and tendered into court $34.29, the amount due as rents out of cotton crop after the $220 had been paid to said bank. In replication to defendants' answer, plaintiff filed a supplemental petition containing general exception and general denial, and pleaded that plaintiff purchased said land without knowledge of any claim or interest of defendants, and that defendants were now estopped to set up defense pleaded in this cause. The case was tried by a jury on April 5, 1912, in the county court of Kaufman county, Tex., and, all the evidence being in, the court peremptorily charged the jury to find for the plaintiff against the defendants for the sum of $254.29, and a foreclosure of the landlord's lien upon crops raised for the year 1911, with 5 per cent. interest from January 1, 1912, and the jury rendered a verdict accordingly. Defendants, Tom Lester and W. S. Lester, filed their motion for a new trial in due time, which was overruled by the court, and they appealed.

The controlling question in the case, and the only one which need be considered and discussed, is raised by the following proposition contended for by appellant: "If a landlord rents land owned by him, and assigns or transfers the rents thereof to his tenant to secure the tenant against loss, by having become surety for the landlord on a note, and, after such renting and transferring or assignment of the rents, the landlord sells the land to a third party, the buyer thereof cannot disturb the contract theretofore made between the landlord and his tenant, and force the tenant to pay to him, the purchaser, the rents accruing from the land, when the tenant has had to pay the note as such surety by reason of default made by the landlord." This is not, we believe, a correct statement of the law applicable to the facts of this case. The testimony, so far as is necessary to state for the purposes of this opinion, is as follows: Appellee, J. B. Zink, without contradiction, testified as follows: "I live at Terrell. I own a farm near Elmo. Purchased this farm from J. H. Faulkner and wife on January 14, 1911, and they gave me a warranty deed to the property with improvements and all appurtenances thereto. * * * In the latter part of December, 1910, before I bought this farm, I went down to Elmo to look at it; there was some one moving in then as I supposed. I saw Tom Lester, and asked him if that was the Faulkner farm, and that I was on a trade for it and wanted to look at it. That was about January 7, 1911. At the time I bought this farm I knew it was rented. I made inquiry of Mr. Faulkner as to whether it was rented or not at the time I bought it. I did inquire as to what the rental contract was. I knew nothing about any agreement made by Faulkner and the Lesters to the effect that the rents might be kept by them and applied on a note due Faulkner to the First National Bank of Terrell." W. S. Lester, one of the defendants, testified: "I rented the farm near Elmo which now belongs to J. B. Zink for two of my boys from J. H. Faulkner, who at that time owned the property. It was in the latter part of November that I rented this land from Faulkner. I agreed to pay rent for the farm, one-third of the corn and one-fourth of the cotton. Nothing was said about oats, but we paid one-third of the oats to Mr. Zink that was raised on the farm. The rental contract was oral. About December 27th Mr. Faulkner came to me, and said that he needed some money; that he could get it at the bank, if Tom and me would go on the note. Tom was one of my sons for whom I rented the land. I told him I did not like to go on notes and hesitated about it; he said to me that I would be perfectly safe; that I had rented his land; and that, if he did not pay the note when it matured, I could keep the rents that were coming to him to indemnify me if I had to pay the note. * * * I didn't know Mr. Zink until after he bought the land. When I learned that Mr. Zink had bought the land, I sent my boys, Newt. and Tom, to Terrell to see him, and tell him about the agreement we had made with Mr. Faulkner about applying the rents on the note we had signed for Mr. Faulkner, in case Faulkner made default in payment." Tom Lester testified: "I am one of the defendants in this suit. I lived in 1911 on the farm formerly owned by Mr. Faulkner, and now owned by Mr. Zink. My father and I rented the farm from Mr. Faulkner in the latter part of November, 1910. We rented for the third and fourth. About December 27th Mr. Faulkner came to see me about signing a note for him at the First National Bank at Terrell. * * * I told him I did not like to go on the note with him; that I was afraid to go on the note, and he told me, if I would go on the note, that the rent of the farm would protect me. * * * I think it was some time in February I learned Mr. Zink had bought the place. As soon as I found it out, Newt. and I went up to Terrell to see Mr. Zink. We told him about what agreement my father and myself had had in reference to signing the note at the First National Bank. About January 7, 1911, Mr. Zink came to me and asked me where the Faulkner farm was. I told him, and he said that he was on a trade for it and wanted to see it." J. B. Zink, appellee, being recalled, said: "The two young Mr. Lesters came to me about a month after I bought the place, and told me about what agreement they and their father had entered into with J. H. Faulkner; that was the first time I knew anything about it."

[1, 2] Where rent is to be paid in the products of the soil, and no time is fixed for the payment, the rent is not due, according to some of the decisions until the end of the

term, and according to others it becomes due in a reasonable time after the crop is gathered. 24 Cyc. p. 1171, and cases cited. Whichever may be the rule, if there is practically any difference in them, is unimportant here, for the rents involved in this litigation did not accrue until long after the appellee purchased the rented premises, and the rents were not reserved in the conveyance to him or otherwise. In such a case the rents pass with the land to the purchaser. The general rule is that even an apportionment of rent is never made, under the common law, in reference to length of time of occupation; but, when the rent falls due, the owner of the reversion at that time, is entitled to the entire sum. Porter v. Sweeney, 61 Tex. 213; Hearne v. Lewis, 78 Tex. 276, 14 S. W. 572. The right of the grantee, however, to the rent, is subject to all the equities or just demands of the tenant or other incumbrances of which the grantee had notice affecting and controlling the payment of the rent. Groos & Co. v. Chittim, 100 S. W. 1006. The indorsement of J. H. Faulkner's note to the First National Bank of Terrell by appellants, with the understanding and agreement that, if said note was not paid at maturity, Faulkner's share of the cotton to be raised on the farm during the year 1911, and to become due to him as rent for the use and occupancy of said farm, subsequently sold to appellee, might be applied by them as a payment on said note, constituted a parol mortgage or lien upon said cotton, and, appellee having no notice of such contract, lien, or mortgage at the time he purchased, the general rule applies, and he, being the owner of the fee at the time the cotton in question was gathered or rent became due, was also the owner of said cotton or rent. The right of the landlord to enter into such stipulations in regard to the rental of his premises as he chooses is not questioned, but when the landlord and the tenant subsequent to the making of the rental contract enter into an agreement forming no part or condition of the rental contract, and affecting, as in this case, the title or interest of the landlord in and to the rents to accrue, notice of such latter contract or agreement to a subsequent purchaser of the rented premises is necessary in order to defeat his right acquired by reason of his purchase to said rents.

[3] The possession of the rented premises by the appellants at the time appellee purchased was not notice to appellee of their claim on the rent cotton by reason of the agreement with Faulkner in relation to the indorsement of his note to the bank, and did not make it incumbent upon him to inquire and seek to ascertain the terms of such agreement. He did, according to the testimony, inquire as to what the rental contract was, and knew at the time of purchase that appellants had rented the premises for the year 1911 at an agreed rental of one-third

of the grain and one-fourth of the cotton to be raised on the rented premises that year, but he did not know of the existence of the parol mortgage or lien created in favor of appellants by virtue of the contract made in reference to their indorsement of Faulkner's note. Prior to his purchase appellee went upon the farm and stated to appellant Lester that he was on a trade for it, and, so far as disclosed by the testimony, appellant said nothing about his agreement with Faulkner in regard to the rents, and having no reason, so far as shown by the evidence, to suspect that any contract in relation thereto than the rental contract itself had been made, appellee was not estopped because of his failure to inquire whether or not some other and further contract had been entered into between the parties in reference to the rents, to set up title to the rents.

Believing that the judgment of the court below is correct, appellants' motion for a rehearing will be overruled, and the judgment of affirmance heretofore rendered by this court will be allowed to stand.

Affirmed.