## FERGUSON v. FERGUSON.

### No. 1705.

Court of Civil Appeals of Texas. Eastland.

Nov. 24, 1937.

Davis & Davis, of Haskell, F. M. Robertson, of Ratan, and E. V. Hardwick, of Stamford, for appellant.

Culbertson & Morgan, of Fort Worth, for appellee.

LESLIE, Chief Justice.

Joe Lee Ferguson instituted this suit against A. M. Ferguson to recover $25,000, alleged to be liquidated damages due him as result of the latter's refusal to abide by the terms of an arbitration award to which they were parties. The trial court sustained a

general demurrer to plaintiff's petition, and he appeals.

Appellant asserts the legal sufficiency of the petition and the appellee attacks it by four counter propositions.

█ Appellee's first two propositions are to the effect that the allegations of the appellant's petition disclose that he elected a remedy by which he acquired the property awarded him by the board of arbitration and is not now entitled to recover said sum as liquidated damages.

These propositions are overruled. There is no question of election of remedies in the case. The contentions evidence a misconception of the petition and the provision of the contract, for a breach of which, the suit is prosecuted. Neither these nor the contract as a whole evidence any intention upon the part of either litigant to forego or waive in any event his equal interest in the estate valued between $200,000 and $300,000 for $25,000, promised merely as a guaranty of the performance of the award.

The appellee seems to proceed upon the theory that the suit is to enforce "the contract to submit the matters in controversy to arbitration." That contract was not breached. The appellee fails to appreciate that it is the contract "to abide the award," for a breach of which this suit is brought for liquidated damages. Although in the same written instrument as the agreement to arbitrate, and dependent upon that as a contract for the necessary consideration to support it, it is by its nature distinct from and merely collateral to the contract to arbitrate. It could not operate until the arbitrators effected an award under the terms of the agreement to submit the controversies to them.

In about three separate parts of the petition, and after reference to the submission of claims and controversies, the pleading states concerning the work of the board: "* * * all matters and causes undertaken to be done under said agreement were duly completed and executed." This has reference to the labors of the arbitrators, and it is not to be understood from these allegations, or the pleading as a whole, that the appellee, A. M. Ferguson, accepted the award, and that Joe Lee Ferguson went into full possession and enjoyment of the properties awarded to him, if indeed such consideration would be material in this lawsuit. The pleading specifically alleges that

A. M. Ferguson failed and refused to abide by the terms of the award, thereby maturing said amount as liquidated damages to appellant.

Regardless of the outcome or whatever may have been the results of any suit or suits which these parties have prosecuted or defended in the courts (referred to in the petition), the plain provisions of the contract according to the allegations obligated A. M. Ferguson to abide by the result of the arbitration award, and it is alleged that he has failed and still refuses to do so, in that he has and does appeal to the courts to destroy the work of the arbitrators, although he waived the right of appeal from their decision under the authority of article 233, Revised Civil Statutes 1925, choosing to "rely solely upon the success of arbitration."

The real grounds upon which the sufficiency of the plaintiff's petition is challenged and its insufficiency sought to be shown, involved, as we think, the following considerations: (1) Does the agreement stipulate for the payment of liquidated damages or penalty? (2) Is that part of the agreement which purports to make provision for liquidated damages or a penalty for the failure of either party to abide the results of the arbitration (considered as distinct from and merely collateral to the agreement to submit controversies to arbitration) a valid or void stipulation or agreement? (3) Do the facts alleged show a breach of the agreement by the defendant?

We shall consider these questions in their order. If said provision (twenty-fifth paragraph) of the contract provides for a penalty, no recovery can be had for the breach, except for actual damages. The determination of the true character of such provisions in a contract is not free from difficulty. Concerning the construction of same it is said in 17 C.J. p. 934, § 233, as follows: "'Whether,' it has been said, 'a sum named in a contract to be paid by a party in default on its breach is to be considered liquidated damages or merely a penalty, is one of the most difficult and perplexing inquiries encountered in the construction of written agreements.' It seems to be generally conceded indeed that each case must be permitted to stand pretty much on its own peculiarities and particular facts. [Collier v. Betterton, 87 Tex. 440, 29 S.W. 467; Copeland v. Holloman (Tex.Civ.App.)

51 S.W. 257.] And that no general rules applicable to all contracts are deducible. The question is one to be determined by the contract fairly construed. Where the parties have agreed on the amount of damages, ascertained by fair calculation and adjustment, and have expressed this agreement in clear and explicit terms, the amount so fixed will be treated as the true damages (stated or liquidated) and not as a penalty."

■ In the instant case the petition alleges that the appellant and appellee (1) mutually agreed in writing to submit their controversies to arbitration, (2) the award, (3) the failure of appellee to abide thereby, and (4) the amount of damages *expressly* stipulated for in writing as liquidated damages. There is nothing ambiguous about the contract or provision in suit. It expressly stipulates for liquidated damages, and the petition so declares without alleging any fact or circumstance manifesting an intention to the contrary. Such allegations prima facie state and import a cause of action for liquidated damages. Durst v. Swift, 11 Tex. 273; Eakin v. Scott, 70 Tex. 442, 7 S.W. 777; Pippin Bros. et al. v. Thompson (Tex.Civ.App.) 292 S.W. 618; Yetter v. Hudson, 57 Tex. 604; Norman v. Vickery, 60 Tex.Civ.App. 449, 128 S.W. 452; Talkin v. Anderson (Tex.Sup.) 19 S.W. 852; Bowden v. Southern Rock Island Plow Co. (Tex.Civ.App.) 206 S.W. 124, 125; Collins-Decker Co. v. Crumpler, 114 Tex. 528, 272 S.W. 772; Kollaer v. Puckett et al. (Tex.Civ.App.) 232 S.W. 914; Witherspoon v. Duncan, 62 Tex.Civ.App. 361, 131 S.W. 660; Brown Iron Co. v. Norwood (Tex.Civ.App.) 69 S.W. 253; Irvin v. Lambert et al. (Tex.Civ.App.) 70 S.W.2d 495; Engelhardt v. Batla (Tex.Civ. App.) 31 S.W. 324; 13 Tex.Jur. p. 323, § 177; p. 123, § 46, 47; p. 135, § 54; 17 C.J. § 308, p. 1005.

■ There could be no warrant for holding that the petition states a cause of action for penalty as a matter of law. We cannot presume that the difference between the actual damages and the amount stipulated was so great as to show, as a matter of law that the latter is a penalty rather than a provision for liquidated damages. Brown Iron Co. v. Norwood (Tex.Civ.App.) 69 S. W. 253.

■■ A careful analysis of the petition and the contract involved leave no doubt that the provision in question presents a prima facie case of contract for liquidated damages. As to whether a sum agreed to be paid as damages for the breach of a contract shall be considered liquidated damages, or only a penalty, is held to depend upon the intention of the parties gathered from a full view of the provisions of the contract, the terms in which they have expressed their intention and the circumstances surrounding the subject-matter of the agreement, as well as the subject-matter itself. In the light of these considerations we must conclude that there is in the instant case no disproportion between the amount of damages it may be reasonably inferred the parties contemplated in the case of its breach, and the amount actually stipulated in the contract as liquidated damages. There is to be found in the law books no better example of a contract wherein the damages which would probably result from a breach of the same would or could be more uncertain or indeterminate than those arising from the breach of this one. That such damages would be large is equally certain. Viewing the matters and controversies from the time and standpoint of the parties when they made the agreement to arbitrate their differences, it is evident that they believed any other method of adjudicating their differences meant numberless lawsuits, attorney's fees, witness fees, and divers other costs incident to instituting and prosecuting suits from the lower courts through intermediate courts and to the Supreme Court. That the parties sensed such situation and evidently calculated the costs in advance is well attested by the language of their contract, the first paragraph of which is as follows: "That whereas, in the matter of the Estate of Kate F. Morton, Deceased, and in the administration thereof, there have arisen many claims or controversies between the parties hereto, individually as heirs, as devisees, and as Temporary administrators, and in order to more speedily and economically adjust all differences between said parties so that there may be less delay, expense, and loss to each, in litigation between them and between each of them and the Estate concerning such controversies, as well as concerning any personal difference between them that have been in prolonged and expensive litigation or are still in litigation, or that might be subject to claims or litigation, growing out of the Estate and the administration thereof, and all other controversies and claims between them, it is agreed and

concluded by said parties hereto, as follows:"

The twenty-fifth paragraph of the agreement to arbitrate restates and emphasizes the existence of differences, controversies, and suits, as well as the solemn purpose entertained by these parties in voluntarily entering into the written agreement to arbitrate and abide the award. Since the alleged breach of this provision is the basis of this lawsuit, it will also be set out: "These agreements, which are executed in triplicate, one copy of which is to be filed and recorded by the county clerk and one copy each for the parties, Witness the desire, the intention, and solemn agreement of the parties to abate or reduce expenses incident to continued or prolonged delays, in litigation through the Courts, and to rely solely upon the success of arbitration as herein provided, for a speedier final settlement of all controversies, and it is mutually covenanted and agreed between them that if either of said parties shall neglect, fail, or refuse to adhere to the provisions of these agreements, or. to carry in effect or abide the award of said Board of Arbitration, he shall forfeit to the opposite party $25,000.00 secured by and from his interest in said Estate, as liquidated damages, and the said Board of Arbitration shall be the sole judge of the compliance with any claim or claims filed hereunder. This is to be in addition to all other legal rights that the opposite party may hold, under the other provisions of this contract or in law to require its performance and enforcement."

In the light of the circumstances presented by the pleading and the contract, the Fergusons undoubtedly realized the importance of estimating or ascertaining with certainty the damages to accrue from a breach of the agreement by either of them to abide the terms of the award. No one could foresee such results better than the litigants. They are men of understanding and large business experience. The subject-matter of the contract involved thousands of acres of land, stocks, etc., aggregating in value between $200,000 and $300,000. Being the sole devisees and legatees of the Morton estate, and finding themselves beset by numerous claims and controversies, they voluntarily selected a tribunal of arbitration as a means of settling their disputes. Thereupon, they mutually agreed in writing that if either refused to carry into effect or abide by the award of said board of arbitration, he would forfeit to the other $25,000 as liquidated damages, etc. By what terms or expressions could the large financial losses incident to numerous suits, protracted litigation, and being deprived of the subject-matter of an award be better or more certainly reflected than by the provisions of their contract above set out, and stated in substance in the plaintiff's petition and made a part thereof?

■ In selecting arbitration as a means of settling their disputes, the parties were well within their constitutional and statutory rights. As said in Magnolia Provision Co. v. Coleman (Tex.Com.App.) 3 S.W. 2d 412, 414: "It has been uniformly held that parties to a contract may agree upon the remedies that shall accrue in case of a breach thereof." Citing many authorities.

■ As before stated, no question arises from a failure of the parties to agree to submit their differences to arbitration. They followed the course of arbitration loyally until the award was made, reduced to writing, and filed in court to be approved thereby. Thereafter, as disclosed by the pleading, the appellee failed and refused to abide by the provision of the agreement, or to carry the award into effect. It is alleged that he has done all in his power to render the award a "nullity" and " * * * is still contesting the same, and by so doing has for more than two years prevented this plaintiff [appellant] from coming into the full title and possession of the property awarded by said arbitration board * * *." The petition shows such property to consist of 3,000 acres of land, valuable stocks, etc., of the probable value of $100,000 or $150,000. The breach as alleged is a unity amounting to a rejection of the award as a whole.

■ We are also of the opinion that there is no merit in the contention that the agreement to arbitrate is against public policy, on the ground that the parties therein "obligate themselves to be bound thereby" and "waive all right of appeal." The public policy of the state in matters of arbitration is best reflected by the provision of our Constitution, statutes, and the decisions. Article 16, § 13, Constitution of Texas; title 10, R.S.1925, art. 224 et seq.; Payne v. Metz, 14 Tex. 56; Forshey v. Galveston, H. & H. Ry. Co., 16 Tex. 516; Temple v. Riverland Co. (Tex.Civ.App.) 228 S.W. 605; Panhandle & S. F. Ry. Co. v. Curtis (Tex.Civ.App.) 245 S.W. 781, 783.

It is believed that these authorities have resolved questions of public policy in favor of recognizing arbitration as an appropriate remedy by which disputants may settle their controversies. Jurisdictions having no such constitutional and statutory provisions may have a different rule, but in such matters we are left in no uncertainty in Texas. Article 16, § 13, Constitution, provides: "It shall be the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial."

In response to the above mandate the Legislature has enacted title 10 of the Revised Statutes 1925. There ample means and methods are provided for settling disputes by arbitration. Article 224, R.S.1925, reads: "All persons desiring to submit any dispute, controversy, or right of action supposed to have accrued to either party, to arbitration, shall have the right so to do in accordance with the provisions of this title."

Article 233, R.S.1925, is as follows: "If a right of appeal is not expressly reserved in the original agreement to arbitrate, no such right shall exist, but the decision of the arbitrators shall be final. If such right of appeal is reserved, and either party desires to appeal from such decision or award, he shall file his written application to that effect with the justice or clerk, as the case may be, on or before the return day of the term of the court next thereafter."

By way of further encouraging settlement of disputes by arbitration, article 238, R.S.1925, provides: "Nothing herein shall be construed as affecting the existing right of parties to arbitrate their differences in such mode as they may select."

Discussing the statutes involving arbitration and award, our Supreme Court in Forshey v. Ry. Co., supra, said: "The award is not a proceeding to bring a cause into the District Court for trial. It is the result of a trial had before the arbitrators. It is res adjudicata by the judgment of the arbitrators; and unless an appeal has been reserved, it is final, until set aside for cause."

In the same opinion the court also states: "If the parties see proper to try their causes in this mode, they must be bound by it. They may reserve the right of appeal, if they see proper; * * * but if not, the award is final; and is to be made the judgment of the Court, as a matter of course,

* * * unless it is impeached for some cause, for which a Court of Chancery would set it aside."

Doubtless the court had in mind the right to impeach an award in cases of "fraud or partiality, misconduct * * * committed on the part of the arbitrators," as stated in Payne v. Metz, supra.

In Re Curtis-Castle Arbitration, 64 Conn. 501, 30 A. 769, 770, 42 Am.St.Rep. 200, it is held that: "Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice; and is intended to avoid the formalities, the delay, the expense, and vexation of ordinary litigation. When the submission is made a rule of court, the arbitrators are not officers of the court, but are the appointees of the parties, as in cases where there is no rule of court."

The spirit of the constitutional provision and the statutes cited demonstrate that disputants may voluntarily agree as they did in the instant case "to rely solely upon the success of arbitration" for the settlement of their differences. The Constitution and statutes sanction arbitration as a method of settling disputes and controversies equally as they sanction courts themselves as agents and tribunals for the adjudication of the rights of citizens. Whether rights are asserted and vindicated by arbitration, or by litigation and decrees of court, it is the law, after all, that prescribes the remedies.

In this connection, see Nippon Ki-Ito Kaisha Ltd. v. Ewing-Thomas Corp., 313 Pa. 442, 170 A. 286, 93 A.L.R. 1067, point 7; Burchell v. Marsh, 17 How. 344, 15 L.Ed. 96.

There are expressions to be found in earlier decisions to the effect that the waiver of the right of appeal in such cases is against public policy rendering the contract void. Whatever the law in those jurisdictions, we think such contracts are to be upheld in Texas. Formerly, no doubt, courts looked with jealousy upon arbitrations generally, and seemed to regard them as means or efforts to oust the courts of jurisdiction in matters of litigation. Such is not the attitude of courts at present. It is the view now that the "more intelligent" judicial sentiment is strongly in favor of arbitration. It is said to be favored for the reason that it is speedier, less expensive, and a more amicable way, than is offered by litigation, for the settlement of differences.

██ Further, and considering appellant's point from a somewhat different angle, it will be observed that in a sense two different arbitrations are involved. The first was performed when the arbitrators· filed their award. There was still another provision incident to the agreement sued on to the general effect that if either party failed to abide the award all claims growing out of such breach of the agreement should be submitted to the board of arbitration for their decision. This was done. It may be said we are not concerned with the question of whether or not this latter agreement, just noticed, was valid or void. If it was a valid agreement, then it was necessary to have the arbitrators make the award thereon as a condition precedent to the right to bring and maintain this suit; but if said agreement should be held void, as having the effect of a provision for ousting the jurisdiction of the courts, then the proceeding before the board of arbitration (when it reassembled) may simply be ignored. That is, if the agreement providing for said liquidated damages or a penalty for the failure of either party to abide the award be à valid agreement (which we think it is) and the incidental provision for submitting questions concerning the same to arbitration (stated in paragraph 25) be held void, that could not militate against the right to maintain this suit. The agreement which this suit seeks to enforce is of essentially a different nature and sufficient within itself, it seems to us, from the incidental provision that claims growing out of breach thereof should be submitted to arbitration for their conclusive determination, as indicated by the expression "and the said board of arbitration shall be the sole judge of the compliance with any claim or claims filed hereunder"—this language referring, of course, to claims for damages specified in said paragraph 25 of the contract.

██ Also, it seems to us that if agreements to arbitrate are not only not void, but favored by the Constitution and laws of our state, certainly a collateral agreement in the nature of a covenant (defining in advance the remedies of the parties in case one of them refuses to abide the. results of the arbitration thereby preventing the arbitration from having its contemplated effect) could not be said to contravene public policy. If agreements to arbitrate are not void on the ground that they are designed to prevent recourse to the courts, then simple agreements designed to aid and make effective the former ought to be determined to be of the same character with reference to the question of validity.

For the reasons assigned, we think the petition states a cause of action for liquidated damages, predicated upon the alleged breach of the agreement to abide by the award and make the same .effective. We have not undertaken to determine whether there may or may not be a valid defense to such indicated cause of action. Such question is not before us.

. The judgment of the trial court is reversed and the cause remanded.

GRISSOM, J., disqualified and not sitting.