## GRIMSLEY v. LIFE INS. CO. OF VIRGINIA.

### No. 9040.

Court of Civil Appeals of Texas. Austin. July 23, 1941.

Rehearing Denied Sept. 24, 1941.

Martin Faust, of New Braunfels, and Brooks, Napier, Brown & Matthews, of San Antonio, for appellant.

Terrell, Davis, Hall & Clemens, E. W. Clemens, and LeRoy Jeffers, all of San Antonio, for appellee.

BAUGH, Justice.

This case arose as follows: In the early part of 1939, appellant became interested in purchasing from appellee a hotel together with its furniture and fixtures, owned by it in San Benito, Texas. He made two offers in writing to purchase same, submitted to appellee at its home office, in Richmond, Virginia, both of which were rejected. Finally, on June 1st, 1939, after extensive oral conference with appellee's agents at San Antonio, Texas, he made a written offer, irrevocable until after June 15, 1939, to purchase the property, setting out in detail the terms and conditions of such purchase. This offer was accepted by appellee in writing on June 6, 1939. Among other things set out in detail in his written offer, appellant agreed to execute a note for $60,000, pay-

able in installments, and to expend not less that $12,500 on the hotel for air-conditioning equipment and other improvements. No cash was to be paid. His offer, among other things, contained the following stipulations:

IX. "It is understood and agreed by me that I will, in addition to the consideration to be paid to you as hereinbefore stipulated, make improvements in and to the hereinbefore described premises by installing air conditioning equipment therein and making other improvements thereto at a cost of not less than Twelve Thousand Five Hundred Dollars ($12,500.00), and that all such improvements will be made and paid for by me and that I will furnish you such evidence as you may require that such improvements have been completed free and clear of liens on or before the first day of October, 1939, and that you shall not be obligated to deliver a deed or bill of sale to the hereinbefore described property until such evidence has been furnished to you. I hereby deposit with you my check for Twenty-five Hundred Dollars ($2,500.00) as earnest money and evidence of good faith in presenting this offer, and I hereby agree to deposit with you an additional sum of Seventy-five Hundred Dollars ($7,500.00) in cash within ten (10) days from the date upon which you accept this irrevocable offer so as to make the total deposit with you the sum of Ten Thousand Dollars ($10,000.00) to guarantee performance by me of this obligation, it being provided, however, that such $10,000.00 may be used to pay the last part of the cost of such improvements. In the event I should fail to comply with my part of this contract, then the sum of $10,000.00 to be deposited by me as aforesaid shall be retained by you as and for your liquidated damages agreed to by the parties hereto on account of such default by me. It is further understood and agreed by me that all of the aforesaid improvements, additions and alterations which I agree to make in and to the hereinbefore described premises shall be first submitted by me to you for your approval in writing prior to the actual commencement of work on the aforesaid improvements. If you fail to deliver me an abstract showing good title to the hereinbefore described real estate or to deliver to me in lieu thereof a title guaranty policy as hereinbefore mentioned with your warranty of the title to the real estate after I have furnished you with evidence of my compliance with the terms of this contract and the completion of the improvements hereinbefore mentioned free and clear of all liens, then it is understood that you will return to me the $10,000.00 deposited and to be deposited with you under the terms of this agreement, or I may require you to deliver me your general warranty deed to such property."

XI. "It is further understood and agreed that in the event you accept this irrevocable offer on or prior to the 15th day of June, 1939, and I should fail, within ten (10) days from such date, to deposit with you the additional sum of $7,500.00 to bring the total guaranty fund to $10,000.00 provided for in paragraph IX of this contract, then the $2,500.00 tendered to you with this contract shall be retained by you as and for your liquidated damages agreed to by the parties hereto on account of such default by me."

After this offer was accepted, appellant failed and refused to deposit the additional $7,500 therein provided for, and directed the bank on which the $2,500 check was drawn to stop payment thereon. The appellee thereupon brought this suit on the $2,500 check. Trial was to a jury, but at the close of the evidence the trial court instructed a verdict for the plaintiff, and rendered judgment accordingly; hence this appeal.

Two main contentions, asserted in his several propositions, are here made by appellant:

1. That the provisions of Paragraph IX are so indefinite, uncertain and illusory as to render the contract unenforceable, and therefore not binding upon him.

2. That the trial court erred in sustaining appellee's demurrer to Paragraphs III and IV of appellant's answer, and excluding evidence in support of same. These paragraphs set up as a defense (a) that said contract was procured by the fraudulent representation of an alleged agent of the Insurance Company that Straus-Frank Company, of San Antonio, Texas, dealers in air-conditioning equipment, would furnish appellant $5,000 of the $10,000 which he agreed in Paragraphs IX and XI to deposit with appellee, but for which false representations he would not have made the offer, and the falsity of which he did not discover until after his offer was accepted. (b) That, if not fraudulent, there was a mutual mistake of fact that Straus-Frank was to furnish such $5,000. These allegations were stricken on the ground

that they sought to vary by parol the terms of a written contract.

In passing upon the first contention made it is necessary to look to the general purposes and provisions of the contract. The principal and major obligation and undertaking of the contract was the purchase of said hotel by appellant for $60,000, all on credit, evidenced by a vendor's lien note for that amount, bearing 4½% interest, payable, in addition to interest, taxes and insurance, at the rate of $3,000 per year in quarterly payments of $750 each, secured by both deed of trust and vendor's lien on the realty and by chattel mortgage on all furniture and fixtures. It was clearly contemplated, though liability of the purchaser was not limited to such source, that these payments were to be made from the operating revenues of the hotel. The improvements provided in Paragraphs IX and XI above quoted were therefore but subsidiary and secondary to the major undertaking of appellant and not additional compensation; and were in the nature of required additional expenditures by appellant on his own property, designed to enhance appellee's security for its debt, and to increase the probable revenue of appellant with which to pay his primary obligation. It was such, we think, that appellee could have waived, or not insisted upon, and still could have held appellant to his principal undertaking, that is, to purchase the property and pay the agreed purchase price.

Not only was this true, but when presented in writing to appellee, regardless of how such offer by him may have been arrived at, it became the offer of the appellant, and it may be seriously doubted whether, after it had been accepted by appellee, he can now, in order to escape all liability under it, be heard to say that his own offer is so uncertain and indefinite that he doesn't know what it means. However that may be, the liability of the parties, and the obligations assumed, should be determined in the light of circumstances surrounding the making of the contract, the relation of the parties, the intent to be accomplished and the certainty, in the light of these things, of the undertaking. Appellant was a hotel man, engaged in the operation of a hotel at New Braunfels, had fully inspected the property he sought to purchase, had made two offers to appellee which had been rejected, and made the third offer after extensive oral discussions with the agents of appellee. He undoubtedly knew what was meant by, and embodied in, his offer to "air condition" the hotel building. In the light of modern construction, as applied to hotels and office buildings, it is a term of common use and meaning. Unless the building as originally constructed, was constructed so as to install equipment for that purpose, all of which appellant manifestly knew, changes, alterations and improvements in the building itself would be necessary. Obviously it would be impracticable to specify in detail and in advance the changes and alterations, or the particular make or type of equipment to be installed. While appellant bound himself to submit to appellee for approval these matters before same were undertaken, clearly the appellee could not, under its contract, have acted arbitrarily or unreasonably in rejecting proposals reasonably calculated to effectuate the purpose sought to be accomplished.

The rule that an offer upon which a contract is predicated must be reasonably definite and certain is so well settled that it has become elementary. 10 Tex.Jur. § 101, p. 175; 12 Am.Jur., § 64, p. 554; 17 C.J.S., Contracts, § 36, p. 364; Texas Employers Ins. Ass'n v. Moore, Tex.Civ.App., 56 S.W.2d 652; Cannady v. Martin, Tex. Civ.App., 98 S.W.2d 1009. Such rule, however, is less strictly applied where suit is for damages for breach, than where specific performance is sought. 12 Am.Jur., p. 556; 6 R.C.L., § 59, p. 644; 65 A.L.R. 102. And where, taken as a whole, the intent of the parties can be reasonably ascertained, the contract is enforceable, even though extrinsic evidence be required to determine matters of detail. Ragsdale v. Mays, 65 Tex. 255; Wilson v. Beaty, Tex. Civ.App., 211 S.W. 524; Stevens v. Palmour, Tex.Civ.App., 269 S.W. 1057; 10 Tex.Jur., § 102, p. 176; 6 R.C.L., § 59, p. 645; 12 Am.Jur., § 65, p. 557; 17 C.J.S., Contracts, § 36, p. 367, et seq.

Such a situation is, we think, here presented. The contract was primarily one for the sale of real estate, wholly on credit. As a secondary and minor undertaking, appellant offered, manifestly to better secure appellee in the payment of the purchase price, to make, subject to approval of appellee, certain improvements on the property consisting primarily of installation of air-conditioning equipment therein at a cost of not less than $12,500; and to make the specified deposits, not only to

guarantee the performance of his contract of purchase, but also that these improvements would be made. The intention of both parties, as reflected by the contract, was, we think, clear and unmistakable; and their obligations sufficiently definite to be enforced. This is all that the law requires.

Appellant next contends that the $2,500 stated in Paragraph XI of the contract should be construed as a penalty and not as liquidated damages. Whether such sums specified in contracts to be paid in cases of breach or default should be construed to be penalties or liquidated damages has been both perplexing and confusing. Ferguson v. Ferguson, Tex.Civ.App., 110 S.W.2d 1016, 1018; 17 C.J. § 233, p. 934; 25 C.J.S., Damages, § 102; 13 Tex. Jur., § 43, p. 120. If the intention of the parties to such contract is clear, that will control. If not, then the language used, the subject matter dealt with, the situation of the parties, the object to be attained, and the surrounding circumstances, must be looked to. Thus, in large measure, each case must rest upon its own facts. However, the general rules applicable, appear to be fairly well settled. They are ably and rather extensively discussed in Ferguson v. Ferguson, supra; Sanders Nursery Co. v. J. C. Engleman, Inc., Tex.Civ.App., 109 S. W.2d 1131; and in 13 Texas Jur., §§ 43 to 52, pp. 120 to 131. If the actual damages flowing from a breach of such contract be uncertain and difficult of definite ascertainment; and if the amount specified, as compared with the obligations of the contract, is not unreasonable, such forfeitures are usually construed to be liquidated damages. Langever v. R. G. Smith & Co., Tex. Com.App., 278 S.W. 178; Irvin v. Lambert, Tex.Civ.App., 70 S.W.2d 495; Ferguson v. Ferguson, supra; Sanders Nursery Co. v. J. C. Engleman, Inc., supra; 13 Tex.Jur., § 49, p. 127; 15 Am.Jur., § 252, p. 684. We think such a case is here presented.

The fact that Paragraph XI of the contract provided that the $2,500 was also to serve as a guarantee by appellant that he would deposit the additional $7,500, aggregating the $10,000 specified in Paragraph IX, does not prevent it from also being a liquidated damage deposit for his failure to do so. Appellant obligated himself not only to execute a note for $60,000 as the purchase price of the property; but to make $12,500 in improvements. As a

guarantee of the latter undertaking he agreed to deposit $10,000, of which the $2,500 check then tendered was a part, and if he defaulted in his entire undertaking the entire $10,000 was stipulated as liquidated damages. Only the $2,500 check was then deposited, but he agreed to deposit the remaining $7,500 within ten days. By Paragraph XI, he further agreed that if he failed to make this deposit as therein specified, then the $2,500 should be deemed liquidated damages "on account of such default by me." Thus there were provided two sums designated as "liquidated damages" available to appellee for separate and distinct defaults, though both may have been integral parts of his entire undertaking. Whether his failure to deposit the $10,000 would vitiate the entire contract, in case appellee decided to waive that portion and insist upon appellant's performance of his main undertaking, is not necessary for us to decide. But it is clear, we think, that the agreement as to the improvements was but a portion of the consideration, severable from the execution of the $60,000 note, and that the parties could validly fix a measure of damages for a breach of this portion of such contract separate and apart from that specified for a breach of the entire contract. This they manifestly undertook to do in Paragraph XI.

Nor do we sustain appellant's second contention above stated. It is now well settled that fraudulent representations by a vendor, or his agent, in the sale of realty relied upon by the purchaser and inducing him to execute a written contract, may be shown by parol and be grounds for rescission or for recovery of damages. Such evidence does not violate the rule excluding parol evidence to vary the terms of a written instrument; but is admissible to show that the purported contract was invalid ab initio, and never became effective as a binding obligation. Reed v. Hester, Tex.Com.App., 44 S.W.2d 1107; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873; Strickler v. Int. Harvester Co., Tex.Civ.App., 141 S.W.2d 989; 17 Tex.Jur., § 379, p. 836; 22 C.J., p. 1253.

But it is also true that oral representations made antecedent to signing such contract, which are promissory or contractual in character and are not embodied in the contract itself but which are contradictory to its terms, cannot be shown to avoid it. This under the general rule that

all previous oral negotiations are presumed to have been merged into the written instrument.

A careful examination of the stricken pleadings fails to disclose, in our opinion, allegations of actionable fraud. There was no allegation of any misrepresentation as to the property or as to anything appellee obligated itself to do in the contract. The alleged misrepresentation was as to what a third party, not privy to the contract would do for the benefit of, and to assist appellant in his performance of the contract. It is true that appellant did allege that the agent of appellee represented to him that Straus-Frank Company would furnish to appellant $5,000 of the $10,000 specified in Paragraph IX of the contract, to be paid back later by him to Straus-Frank Company; but he also alleged that in the extensive oral negotiations had on the morning of June 1st preceding the signing by him of the written offer, Straus-Frank Company had a representative present participating therein. Manifestly, therefore, appellant could readily have ascertained prior to signing his offer, whether Straus-Frank Company would advance to him such $5,000. Notwithstanding all these facts and circumstances, after the oral negotiations were concluded, and appellant's offer was reduced to writing, he took such written proposal under advisement, for further examination and for the examination of his attorney before signing it, and did not sign it until in the afternoon of that day. And as signed by him it contained no condition that Straus-Frank Company was to furnish him any of such funds, but an unequivocal agreement that he would deposit the $10,-000. These circumstances, in our opinion, show no actionable fraud on the part of appellee.

As stated above, the misrepresentations alleged do not relate to the property involved, nor to anything the appellee agreed to do or refrain from doing. No false promise on appellee's part is alleged, but merely an oral assurance, prior to making the contract, alleged to have been made that a third party whose representative was present in such oral negotiations would assist appellant by a loan to him to help him pay for the property. In spite of this, even if conceded to be wholly true, appellant signed a written offer, which by acceptance became a contract, to himself furnish all moneys necessary to pay for the property. These facts bring the case clearly within the holdings in Wooters v. International & G. N. Ry. Co., 54 Tex. 294; Wright v. Couch, Tex.Civ.App., 54 S.W.2d 207; Distributors Inv. Co. v. Patton, Tex. Com.App., 110 S.W.2d 47; Mitcham v. London, Tex.Civ.App., 110 S.W.2d 140. Clearly, we think, the oral representations alleged to have been made prior to the signing of the contract are in direct contradiction to the express terms of the contract itself, signed with full knowledge of its provisions, and cannot now be asserted as grounds of fraud to vitiate it.

The trial court did not err, therefore, in sustaining appellee's demurrer to such pleadings. What has been said above applies with equal force to the issue of mutual mistake pleaded by appellant.

Finding no error in the record, the judgment of the trial court is affirmed.