**COLLIER et al. v. WAGES. (No. 10042.)**

(Court of Civil Appeals of Texas. Fort Worth. Oct. 28, 1922.)

1. **Landlord and tenant ⇐=112½, New, vol. 9A Key-No. Series—Evidence held to support finding that lessors in taking possession of premises after breach by lessee elected to terminate the lease.**

Where a portion of a ground floor space was leased under a written contract stipulating that lessee agreed to pay his rental at a fixed sum for the entire period in monthly installments and that in default of any such payment the lessors could re-enter and repossess the premises, evidence *held* to show that upon default of the lessee to make the payments as stipulated the lessors in demanding and receiving the key from lessee to the building intended to take possession of the premises and did take and retain possession thereof, thereby rescinding the contract and terminating lessee's liability.

2. **Landlord and tenant ⇐=213(5)—Lessee held not entitled to recover back payments of rentals paid under lease breached by him.**

Where lessors leased to lessee the ground floor space of a building, stipulating that lessee was to pay rental for the premises for the entire period in monthly installments and that in case of default thereof the lessors could re-enter and repossess the premises and declare the lease void, all payments made by lessee up to the time he abandoned the premises were due under his contract, and he could not recover back any part which he had already paid and which he had contracted to pay.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Suit by R. H. Collier and others against F. C. Wages. From a judgment for defendant, plaintiffs appeal. Affirmed in part and reversed in part.

T. F. Hunter, of Wichita Falls, for appellants.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellee.

DUNKLIN, J. R. H. Collier and others leased to F. C. Wages a portion of the ground floor space of a building located in the town of Graham. The lease was in writing, was dated January 14, 1921, and extended over a period of two years from that date. The lease stipulated that Wages agreed to pay as rental for the premises for the entire period the sum of $4,800 in monthly installments as follows: $400 in cash on January 18, 1921, which was the beginning of the rental period; and $200 on the 18th day of each and every month thereafter until the whole sum of $4,800 should be paid. The lease contained this further stipulation:

"Provided, however, that if said rent, or any part thereof, shall remain unpaid for five days after it shall become due as hereinafter provided; or if said lessee's interest shall be sold under execution or other legal process, then it shall be lawful for said lessors or their agents, assigns or heirs without notice or demand, into said premises to re-enter, and the same to have again, re-possess and enjoy as in their first and former estate; and thereupon this lease, and everything therein contained on said lessors' behalf to be done and performed, shall cease, determine and be utterly void."

This suit was instituted by the lessors against Wages to recover $500 alleged to be the amount due by him as unpaid rentals on said premises at the time the suit was filed. Plaintiffs also prayed for the foreclosure of a lien alleged to have been given by the terms of said lease contract upon certain property which was placed in said premises by the lessee during the life of the lease.

It was further alleged that on June 18, 1921, plaintiffs and defendant entered into a supplemental contract, by the terms of which plaintiffs agreed to a reduction of the rent on the premises of $50 per month for three months, beginning respectively June 18, July 18, and August 18, 1921, leaving the amount to be paid on each of those dates the sum of $150; said agreement leaving the original lease contract in all other respects in full force and effect.

In reply to plaintiffs' petition, the defendant filed an answer containing a general denial and a special plea to the effect that, under and by virtue of the clause in the lease quoted above, plaintiffs had the right to rescind the contract and re-enter the premises upon the failure of the defendant to pay the rent due on the same for a period of five days after it should become due; and that under and by virtue of the terms of that portion of the contract such a re-entry would operate as a termination of the lease. In that connection the defendant further alleged that he was unable to pay the rent for the month beginning July 18, 1921, and due on that date, on the date that the same became due, and that thereafter on the 20th day of July, 1921, the plaintiffs elected to rescind the contract and did rescind it and demanded the key to the premises of defendant's agent in charge, who complied with said demand, and that upon receiving the key plaintiffs took possession of the building and premises and ever since have held possession thereof; by reason of all of which facts the lease contract was automatically terminated as to all parties, and that thereby defendant's original contract to pay rentals after

plaintiffs so elected to rescind has been discharged, except the rental for the three days beginning July 18, 1921, and ending July 20, 1921.

The defendant further filed a counterclaim against the plaintiffs for the sum of $130, which was alleged to be excess rentals which defendant had paid plaintiffs over and above the amount they were entitled to receive for the period of time the defendant occupied the premises prior to the rescission of the contract and re-entry of the premises by the plaintiffs. In that connection it was alleged that plaintiffs were entitled to receive the rentals at the rate of $200 per month, and that defendant had paid them on the rental account the sum of $1,350 up to July 20, 1921, which amount, at the rate of $200 per month from July 18, 1921, to July 20, 1921, was $130 excess payment, and defendant sought a recovery against plaintiffs for the amount of such excess.

The trial was before the court without a jury, and findings of fact and conclusions of law were filed by the trial judge. After reciting the execution of the rental contract by all the parties and the terms and provisions thereof noted above, the trial judge made these additional findings:

"(3) On June 18, 1921, by mutual agreement the parties to said contract agreed in writing to reduce the rent to $150 per month for the months of June, July, and August, 1921.

"(4) Pursuant to said agreement in writing, as modified, the said Wages paid to plaintiffs the sum of $1,350 on the following dates, to wit: January 18, 1921, $400; February 18, 1921, $200; March 18, 1921, $200; April 18, 1921, $200; May 18, 1921, $200; June 18, 1921, $150; aggregating $1,350.

"(5) On July 18, 1921, said F. C. Wages defaulted, in that he failed to pay the sum of $150 as provided for in said contract.

"(6) On the 24th day of July, 1921, the plaintiffs, through the plaintiff R. H. Collier, demanded of Harry Day, the agent and employee of defendant, F. C. Wages, that the key to said premises be turned over to plaintiffs, and that such demand was repeated on July 25, 1921, and that said key was delivered to plaintiffs by said Day on July 25, 1921.

"(7) It was the intention of plaintiffs in demanding said key of said Day to take possession of said premises, and that plaintiffs did take possession of said premises upon the delivery of said key, and that they have retained possession thereof since that time.

"(8) Defendant, F. C. Wages, retained possession of said premises for six months and seven days, for which period the rental at $200 per month would amount to $1,246.67.

"Conclusions of Law.

"I conclude as a matter of law that under that provision of the contract quoted in my second finding above, that upon the failure of the defendant, F. C. Wages, to pay the rent due on July 18, 1921, the plaintiffs had the right to elect to stand on their contract and sue for rental or rescind the contract and demand possession of the premises leased under the terms of said written contract.

"I conclude as a matter of law that the acts of the plaintiffs in demanding the key to said premises and taking possession of said key and of the said premises amounted to an election by plaintiffs to rescind the contract.

"I conclude as a matter of law that the plaintiffs having elected to rescind the contract and repossess themselves of the leased premises are conclusively precluded from standing on the contract and collecting rentals thereunder.

"I conclude as a matter of law that since the plaintiffs on July 25, 1921, conclusively elected to rescind the contract and take possession of the premises and dispossess the defendant of said premises, the defendant is entitled to recover of the plaintiffs the sum of $103.33, being the amount paid plaintiffs by him, less the interest accruing from the beginning of the lease down to the time when plaintiffs repossessed themselves of said premises."

Judgment was entered in accordance with the conclusions so reached, and plaintiffs have prosecuted this appeal.

The evidence shows without controversy that on July 18, 1921, the defendant, who was a merchant and had a stock of goods in the rented premises, moved his entire stock from the building, and that on July 25th the key was turned over to R. H. Collier, acting for himself and the other plaintiffs, and that the defendant never thereafter occupied the premises or asserted any right of possession.

Appellants insist that the evidence was wholly insufficient to support the finding stated in the seventh paragraph of the findings of fact, to the effect that it was the intention of the plaintiffs, in demanding the key to the building of the defendant's agent, to take possession of the premises, and that plaintiffs did take possession of the same upon the delivery of the key and have retained possession thereof since that time.

The evidence was sufficient to support the finding that after the defendant had vacated the premises, and on July 24, 1921, the plaintiffs, through R. H. Collier, demanded of Harry Day, the agent and employee of F. C. Wages, that the key of the premises be turned over to the plaintiffs, and that such demand was repeated on July 25, 1921, and that said key was delivered to plaintiffs by said Day on that date.

Harry Day, the agent and employee of the defendant who had charge of the defendant's business and who had possession of the key to the premises after the defendant's stock of goods had been moved out, testified as follows:

"Mr. Collier asked me for the key twice. The first time he asked me if I had the key with me. He said: 'I want the key. Have you got the key to the door?' I said: 'No, I haven't; it is over at the hotel.' He said: 'Well, I want it; I might want to rent the room.' The next day I brought it over. We were standing out in front of the restaurant. He said, 'Have you got that key?' I said, 'Yes, you bet I have.' He said: 'Well, I want it; I might want to rent that room this year;

I have got to get some money out of it some way.' I gave it to him then. He is mistaken about my leaving the key for him at the lobby of the hotel. He did not tell me then that Mr. Wages could have the building back at any time that he wanted it."

The evidence also shows conclusively that the defendant failed to pay the rental that was due on July 18, 1921, as found by the trial judge; that he voluntarily vacated the premises by moving therefrom his entire stock of goods; that he never made any specific offer to surrender possession, and never took possession or offered to take possession of the premises after the surrender of the key to plaintiff Collier. The evidence also shows that plaintiffs have never placed any one else in possession of the premises, and have never used the same themselves since they were vacated by the defendant, although they have held the key thereof all that time.

In Morris v. De Wolf, 11 Tex. Civ. App. 701, 33 S. W. 556, the following was said:

"Where a lease contract contains a proviso that on nonpayment of rent, the term shall cease, the lessor, and not the lessee, has the elective right of determining it upon breach made. The principle that no man is permitted to take advantage of his own wrong, prevents the lessee from doing so."

To the same effect is the decision in the case of Brady v. Nagle (Tex. Civ. App.) 29 S. W. 943. In Goodman v. Republic Investment Co., 215 S. W. 466, the following was said:

. "It is not every [re-entry] by the landlord on the land of the tenant that will constitute a resumption of possession and control. In order that such [re-entry] amount to a resumption of possession it must be inconsistent and hostile to the right of possession of the tenant, and a mere [re-entry] on the premises to make preservative repairs, or for any other purpose, providing same is made in subserviency to the estate of the tenant, and without intention to resume possession of the premises, would not amount to a resumption of possession and control."

In Peticolas v. Thomas, 9 Tex. Civ. App. 442, 29 S. W. 166, in which it appeared that the tenant vacated the premises and left the key with the lessor, after which the lessor attempted to re-rent the premises to other persons, the court said:

"The fact of the key being left' with the lessor or his agent, and notice of surrender being given, would not be sufficient to terminate the lease. An acceptance of the key and an attempt to rent the premises, accompanied with no other acts or words evidencing an acceptance of surrender, would not be sufficient. The facts do not sustain the verdict, and a verdict should have been instructed for appellant [lessor]."

To the same effect are the following decisions: Fleming v. Texas Loan Agency, 24 Tex. Civ. App. 203, 58 S. W. 971; Smith v. Hunt, 32 R. I. 326, 79 Atl. 826, 36 L. R. A. (N. S.) 1132, Ann. Cas. 1912D, 971; note on page 1132, 36 L. R. A. (N. S.) which shows a quotation from Tiffany on Landlord and Tenant—all of which authorities are cited by appellant. And in appellants' brief the following is quoted from Tiffany on Landlord and Tenant:

"A question frequently arises as to what constitutes a resumption of possession by the landlord on the abandonment of the premises by the tenant sufficient to effect a surrender. It may be necessary for the landlord to assume some measure of control over the property to protect it from injury, or he may desire to utilize it in order to recoup himself for the losses of the stipulated rent; and yet, in neither of these cases does he usually desire to preclude himself from asserting personal liability on the covenant for the payment of rent. The fact that the landlord enters and cares for the premises after the tenant's abandonment is not regarded as showing resumption of exclusive possession effecting surrender, nor does the making of repairs in itself have that effect. The question is whether the possession taken by him is of an exclusive character with the intention of occupying or controlling the premises as his own to the exclusion of the tenant in case the latter desires to return; and this is ordinarily a question of fact."

Another quotation appears in appellants' brief from the case of Smith v. Hunt, supra, substantially to the same effect as that from Tiffany on Landlord and Tenant. All those authorities, as we interpret them, are in accord with the statement contained in the quotation from Tiffany on Landlord and Tenant, which is to the effect that the test by which it is to be determined whether or not the lease has been terminated is "whether the possession taken by him (the lessor) is of an exclusive character with the intention of occupying or controlling the premises as his own to the exclusion of the tenant in case the latter desires to return; and this is ordinarily a question of fact."

[1] The trial court was the exclusive judge of the credibility of the witnesses and of the weight of the evidence, and we are of the opinion that the testimony of the witness Day, quoted above, considered in connection with all the other facts and circumstances in evidence, was sufficient to support the finding by the trial judge that in demanding the key the plaintiffs intended to take possession of the premises and did take and retain possession thereof.

The conclusions of law reached by the trial judge, that the acts of the plaintiffs in demanding the key to the premises with the intention to take possession thereof, and the taking possession thereof by them amounted to an election by the plaintiffs to rescind the contract, and that plaintiffs, having elected to rescind the contract and repossess themselves of the leased premises, are conclusively precluded from standing on the contract

and collecting rentals thereunder, are assailed by appellants as erroneous. Those conclusions of law were based upon all the findings of fact, which included also the stipulation contained in the lease contract, quoted above, to the effect that—

If any part of the rental which defendant contracted to pay should remain unpaid for five days after it shall become due, as provided in the contract, "then it shall be lawful for said lessors or their agents, assignees or heirs without notice or demand, into said premises to re-enter, and the same to have again, repossess and enjoy as in their first and former estate; and thereupon this lease, and everything therein contained on said lessors' behalf to be done and performed, shall cease, determine and be utterly void."

After the defendant had defaulted in payment of the rental due on July 18, 1921, for more than five days after its due date, the action of the plaintiffs, in intentionally repossessing themselves of the premises with full knowledge of that provision in the lease, warranted the conclusion reached by the trial judge that plaintiffs should therefore be held to have elected to rescind the contract and terminate any liability on the part of the defendant for rentals thereafter. To hold otherwise would be to ignore the plain terms of the provision in the lease contract quoted above, the binding force of which has not been attacked in any manner by the plaintiffs. Ledsinger v. Burk, 113 Ga. 74, 38 S. E. 313; American Bonding Co. v. Pueblo Inv. Co., 150 Fed. 17–30, 80 C. C. A. 97, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357.

Appellants insist that the evidence conclusively shows that in accepting the key from Day they did so with no intention to repossess themselves of the premises to the exclusion of the defendant, but for the sole purpose of locking the door and caring for the property, and that they have been ready and willing at all times for defendant to reoccupy the property, and that they have given him notice to that effect. It is true that Collier and some of the other plaintiffs so testified, but the court was not bound to accept such testimony as decisive of the issue of intention, to the exclusion of the testimony of witness Day and other facts tending to corroborate him, including the provision in the lease itself, set out in the court's findings. Furthermore, if the lease was terminated when appellants repossessed themselves of the property, as found by the trial judge, then it was not revived by any subsequent offer on the part of the plaintiffs to the defendant to resume possession and continue the lease under the terms and provisions of the contract, nor by reason of the fact, if it be a fact, that plaintiffs have ever since held the property with the understanding on their part that the lease continued to be in full force and effect and with no intention to claim possession adversely to the defendant.

Accordingly, all assignments of error, relating to the refusal of the court to render judgment in favor of the appellants upon their demand asserted against the defendant, are overruled, and the judgment in favor of the defendant as to that cause of action is affirmed.

[2] But we are of the opinion that the judgment in favor of the appellee against appellants upon the cross-action for the sum of $103.33 was erroneous. All payments that had been made by him up to the time he abandoned the premises were due under his contract to the appellants. In making those payments he did no more than he contracted to do. If he had continued the lease to the end of the two years contracted for, the entire consideration of $4,800 would have been paid at the beginning of the twenty-third month of that period. Apparently, the rental was estimated to be at the rate of $200 per month, payable at the beginning of the month. So construing the contract, the $400 cash payment, made when the lease was executed, did cover the twenty-fourth month of the lease. Appellee could have reaped the benefit of that payment if he had complied with his contract in full, but he breached the contract without fault on the part of the plaintiffs, and before they elected to terminate it, and therefore he is in no position to recover back any part of that which he had already paid and which he had contracted to pay. The contract did not provide for any repayment to the defendant of any part of the consideration which he had already paid, in the event of a breach of the contract by him. And to allow him a recovery of any portion of the payments so made by him would be to permit him to profit by his own wrong. The case of Ramsey v. Odiorne (Tex. Civ. App.) 210 S. W. 615, cited by appellee to support the judgment on the cross-action, in which the defendant was allowed to recoup some of the payments already made by him, is not in point, because, in that case, the landlord himself breached the contract and ordered the tenant to vacate the premises before the expiration of the lease, and which order was complied with. Galbraith v. Wood, 124 Minn. 210, 144 N. W. 945, 50 L. R. A. (N. S.) 1034, Ann. Cas. 1915B, 609; Thomas Peebles & Co. v. Sherman, 148 Minn. 282, 181 N. W. 715; Bloch v. Tucker, 107 Ark. 349, 154 S. W. 1140; Harvey v. Weisbaum, 159 Cal. 265, 113 Pac. 656, 33 L. R. A. (N. S.) 540, Ann. Cas. 1912B, 1115; Evans v. McClure, 108 Ark. 531, 158 S. W. 487.

For the reasons stated, the judgment of the trial court denying plaintiffs a recovery upon the cause of action alleged by them is affirmed, but the judgment in favor of defendant on his cross-action against the plaintiffs is reversed, and judgment is here rendered that the defendant take nothing by reason of such cross-action.

Affirmed in part; reversed and rendered in part.