## BARRET v. HEARTFIELD et al.
### No. 3614.

Court of Civil Appeals of Texas. Beaumont.
Feb. 22, 1940.

Rehearing Denied May 29, 1940.

Bryan E. Bush, of Shreveport, La., and Orgain, Carroll & Bell and B. D. Orgain, all of Beaumont, for appellant.

W. O. Bowers and W. C. Ross, Jr., both of Beaumont, for appellees.

WALKER, Chief Justice.

This is an action for rent eo nomine by appellant, W. M. Barret, against C. A. Heartfield, and appellees, Mrs. R. A. Heartfield and G. B. Heartfield. The case is before us on appeal by appellant from a judgment on an instructed verdict in favor of appellees. Judgment was rendered in favor of appellant against C. A. Heartfield on an instructed verdict on the notes sued upon and certain other issues, from which C. A. Heartfield has not prosecuted an appeal.

The facts between appellant and appellees are as follows: On the 23rd day of May, 1927, appellant leased to the three defendants in this suit a certain lot in Cedar Grove, Caddo Parish, Louisiana, for a period of ten years from the date of the lease, and in consideration the lessees executed to him their monthly rental notes, one for each month, maturing on the first of the month, during the term of the lease. This suit was on the last forty of these notes, the first note in controversy maturing the first day of February, 1934, and the last note on the 1st day of May, 1937, each note for the sum of $150 with interest at eight per cent per annum from maturity, and ten per cent additional as attorney's fees.

The lot was leased to appellees for a filling station, and appellant was to make on the lot the following improvements: "The Lessor hereby agrees to erect on the above described property a filling station with driveways and equipment suitable to lessees, it being agreed between the parties that the total cost of the erection of the filling station, laying of paved driveways, equipping and everything in its entirety shall not cost more than Thirty-Five Hundred ($3,500.00) Dollars, that any addition which would increase the amount to above Thirty-five Hundred Dollars shall be placed thereon by the Lessees herein".

Plans and specifications for the improvements were made a part of the lease contract, and by the contract appellant was obligated to install the following equipment in the filling station: "All equipment with the exception of the plumbing is to be furnished by Wm. M. Barret. The plumbing shall consist of two toilets and and two lavatories with necessary fittings. The building shall also be piped for gas and water, the contractor to furnish necessary fittings. Wm. M. Barret shall furnish the gasoline pumps, tanks and air compressor but the contractor is to install same and furnish all necessary piping, switches, etc."

Appellant erected the building and installed the equipment as per his contract; appellees accepted the building as in compliance with the contract, took possession, and began the operation of the filling station. They remained in possession, duly paying the monthly rental notes, until sometime in 1928, when they made a sub-lease to the Heartfield Company, Ltd., a Louisiana corporation. Whether appellant knew of and consented to this sub-lease was a controverted issue. The corporation paid the lease notes up to and including the note maturing on the first day of December, 1932, and then defaulted in the payment of all other notes. Appellees paid none of the notes after the sub-lease to the Heartfield Company, Ltd. On the 13th day of January, 1934, appellant instituted suit in the first judicial court of Caddo Parish, Louisi-

ana, on all notes in default against C. A. Heartfield in personam, "and against Mrs. R. A. Heartfield, G. B. Heartfield, The Heartfield Company, Inc, in rem and against all defendants in solido, in the sum of nineteen hundred and fifty ($1950.00) dollars, together with eight per cent per annum interest on each monthly installment of one hundred and fifty ($150.00) dollars from date until paid, beginning on January 1, 1933, together with attorney's fees of ten per cent on the full amount to be collected, and all costs of this suit." He plead his landlord's lien as follows: "Petitioner further avers that there is equipment, merchandise, furniture and fixtures in said leased premises; that he has a lessor's lien, privilege and right of pledge upon all of the furniture, property, merchandise, fixtures, tanks and equipment in said leased premises, to secure the full amount of the aforesaid indebtedness; and that he has good reason to believe that said sub-leasee and said lessees will remove the furniture, fixtures, equipment, tanks, merchandise and other property out of said premises and that he may be thereby deprived of said lien, privilege and right of pledge."

On his prayer, a provisional writ of seizure was issued commanding the sheriff of Caddo Parish "to provisionally seize, attach and take into your possession the goods, merchandise, furniture and other property now on said leased premises or which may have been removed therefrom within the last fifteen days to the amount of what will suffice to discharge the said debt and costs of suit; and that you give notice of this proceeding, and make return of this writ, stating the manner in which you have executed the same, before our said Court, on the first day of our next term thereof."

On this writ on the 15th day of January, 1934, the sheriff seized the following property, as shown by his return: "I have seized and taken into my official possession the following equipment: 1 cash register, 1 hall tree, 1 typewriter, 1 check protector, 1 Barough adding machine, 1 steel filing cabinate, 1 Electric vulcanizer, 1 lot auto axcesares, 1 tire changer, 1 tire spreader, 1 steel tire rack, 3 oil containers, 1 coal oil container, 1 greese gun, 2 Tokheim Electric pumps, 1 gas heater, 1 floor jack, 1 steel greese rack, 1 steel safe, 1 office table, 1- 550 & 1- 280 gallon storage gasoline tanks, 1 electric buffer and all notes receivable, 2- 10' gallon visable gasoline pumps, 2- 550 gasoline storage tanks, 1 air compressor, 5 oil containers."

On the 11th day of April, 1934, appellant was awarded judgment in personam against C. A. Heartfield "and against Mrs. R. A. Heartfield, G. B. Heartfield and The Heartfield Company, Inc. in rem, insofar as may be satisfied out of the proceeds of the property herein seized, and against all defendants in solido in the full sum of nineteen hundred and fifty ($1950.00) dollars."

The judgment directed the sheriff to proceed to sell the property held by him under the provisional writ of seizure. In executing the writ the sheriff sold to appellant on the 13th day of June, 1934 all the property so seized and held by him. After the sale appellant took charge of the leased premises, and from time to time leased the filling station to third parties, who paid him the rent.

In defense of appellant's cause of action on the notes, appellees plead generally the facts as stated above. It was the theory of their defense that appellant had evicted them from the leased premises, and by his acts, conduct, and agreements with them had terminated the lease contract. By supplemental petition appellant denied generally the facts plead by appellees, pleading that his act in leasing the property was for the benefit of appellees; he conceded appellees, as a credit on the notes in controversy, the full amount of rent collected by him.

## Opinion

When the tenant abandons the leased premises, it is the settled law of this state that the landlord may relet the premises by taking proper precaution not to create a surrender by operation of law. Early v. Isaacson, Tex.Civ.App., 31 S.W.2d 515; see criticism of this case 9 Texas Law Review 578. So, the mere renting of the filling station by appellant to third parties after appellees' default in the payment of their rent notes and after they and their sub-lessee vacated the premises in violation of their contract did not terminate the rent contract and did not release appellees from the payment of the notes in controversy. Marathon Oil Co. v. Rone, Tex. Civ.App., 83 S.W.2d 1028.

To terminate a lease contract or to constitute a surrender, the minds of the parties must meet; the termination or surrender must be by mutual agreement. Ear-

ly v. Isaacson, supra. On this issue there was a conflict in the evidence. By their evidence appellees contended that appellant had agreed with them to terminate the lease, and that with his consent they had surrendered the property back to him. This issue was strongly controverted by appellant. So, on the issue of mutual surrender and termination, the instructed verdict cannot be sustained.

■ Appellant had the right to seize by legal process the personal property on the leased premises owned by appellees or their sub-lessee, The Heartfield Company, Ltd., upon which he held a landlord's lien. In contemplation of law, the occupancy of the filling station by the sheriff for the purpose of seizing and holding the property upon which appellant had a landlord's lien was the occupancy of appellees and their sub-lessee, or at most was nothing more than a trespass. Meyer, Weis & Co. v. Oliver & Griggs, 61 Tex. 584. The following proposition is announced by 36 Corpus Juris 260: "An entry by the landlord by virtue of summary proceedings, or the levying of an attachment, a distress warrant or a writ or replevin, coupled with a taking of possession of the premises, does not constitute an eviction." See also In re Bradley, D.C., 225 Fed. 307; Daniels v. Logan, 47 Iowa 395; Wolf v. Ranck, 161 Iowa 1, 141 N.W. 442; Noble v. Warren, 38 Pa. 340.

The theory upon which these cases were decided seems to be that the occupancy of the sheriff was the occupancy of the tenant, and that no inference as a matter of law can be drawn from the seizure of the property on the leased premises by the sheriff of an intent on the part of the landlord to evict the tenant. These authorities clearly hold that the act of the sheriff in entering the premises and seizing the property does not, as a matter of law, amount to an eviction. So, on this proposition the instructed verdict does not have support.

■ The one remaining fact in the case is the act of appellant in directing the sheriff to seize, and hold, and sell the gasoline pumps, tanks, and air compressor, installed by him as a part of the equipment of the filling station. He installed these pumps and furnished the air compressor as a part of his contractual obligation to appellees. After this property was seized by the sheriff under the direction of appellant, appellees made no further claim to the premises.

They treated the acts of appellant as an eviction, and their conduct amounted to a tender of surrender by them to appellant of the leased premises. It is our conclusion that the act of appellant, directing the sheriff to seize and hold and sell the equipment furnished by him to appellees under his contract, as a matter of law, constituted an acceptance by him of the surrender of the premises tendered by appellees; his acts constituted an eviction of appellees and a termination of the lease. We are forced to this conclusion for the simple reason that appellant took from appellees a part of the very property leased by him to them, and which property so taken was essential to the operation of the filling station by appellees. We quote the following proposition from 35 C. J. 1086: "A surrender by operation of law occurs where the parties without express surrender do some act or acts from which it is necessarily implied that they have both agreed to consider the surrender as made—acts which are necessarily inconsistent with the continued relation of landlord and tenant. While it has frequently been said that whether a lease has been terminated by operation of law is a question of intention of the parties, it is, nevertheless, held that this mutual agreement may be implied upon the principle of estoppel from the acts of the parties, independently of, and even contrary to, their actual intent. The surrender or abandonment of a written lease may be inferred from the acts and conduct of the parties."

The following proposition from Samson v. Rose, 65 N. Y. 411, was quoted by Chief Justice Fly with approval in Calhoun v. Kirkpatrick, Tex.Civ.App., 155 S.W. 686, 687: "The effect of the entry by a lessor, where he may lawfully make it for a breach of condition, is to determine the estate of the tenant altogether, and wholly revest the same in the lessor or his assigns."

In Collier v. Wages, Tex.Civ.App., 246 S.W. 743, 745, Judge Dunklin quoted with approval the following proposition from Goodman v. Republic Inv. Co., Tex.Civ. App., 215 S.W. 466: "In order that such (re-entry) amount to a resumption of possession it must be inconsistent and hostile to the right of possession of the tenant."

In answer to what has just been said, appellant advances the following proposition: "The command for provisional seizure did not specifically designate property to be seized, but generally described "goods, merchandise, furniture and other property now

946

on the leased premises." To determine if a portion of the leased premises were seized, it is necessary to refer to the sheriff's return and to the testimony of C. A. Heartfield. Nowhere does it appear that the appellant, or anyone for him, pointed out to the sheriff the specific articles to be seized."

In his petition in the Louisiana suit, appellant plead "a lessor's lien" against the equipment, praying for "a writ of provisional seizure" commanding the sheriff to seize the equipment and prayed further that the court recognize and maintain "a petitioner's lessor's lien" against the equipment. It was on that petition that the writ was issued to the sheriff, and executed by him in the manner stated above. In our judgment appellant's proposition does not relieve him of the legal consequences of his act in praying for the seizure and sale of the equipment that he had furnished appellees under his contract with them, which prayer was granted by the court.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.