## MILLER v. COMPTON.
### No. 2495.

Court of Civil Appeals of Texas. Eastland.

Feb. 9, 1945.

C. F. Sentell and John E. Sentell, both of Snyder, for appellant.

M. F. Billingsley, of Munday, and D. J. Brookreson, of Benjamin, for appellee.

LESLIE, Chief Justice.

J. E. Miller instituted this suit against Bob Compton to recover rent under a written contract whereby Miller leased

for grazing purposes to Compton for a term of five years 4,160 acres of land·in Knox and Foard Counties. The defendant Compton denied liability and alleged the plaintiff breached the lease contract, thereby relieving him from any further payments of rent. By way of cross-action defendant Compton sought to recover damages accruing to him by reason of having to surrender possession of the leased land and dispose of many of his cattle at a loss. Further, by way of cross-action, he charged Plaintiff Miller with wrongfully causing a writ of attachment to be levied on his property, resulting in both actual and exemplary damages. That the affidavit, etc., for the writ was false and the proceeding unlawful.

The trial before the court without a jury resulted in a judgment for Compton on the ground that said Miller breached the contract, relieving him, Compton, from the further payment of rents, but the judgment denied Compton any recovery for damages by reason of having to dispose of his stock on account of the loss of pasturage and also denied him any recovery of actual or exemplary damages by reason of wrongful attachment. The plaintiff appeals.

There are no assignments of error challenging the action of the court with reference to any phase of Compton's cross-action and no appeal is prosecuted from that part of the judgment denying him recovery of damages. The rights of the litigants are believed to turn upon the meaning and legal effect of the following provision in the lease contract as applied to the other undisputed facts and testimony in the case:

"This lease is made subject to sale at any time during the life of this lease, and in case of sale lessee agrees to give complete possession within thirty days after sale has been completed and receipt of written notice of such sale and demand for possession; however, it is understood and agreed that no sale of the above described land can be made by lessor, unless and until lessee has been given an opportunity to purchase the same at the same price and terms, and has refused to so purchase, or failed to so purchase, within ten days after offer has been submitted;

"In case of sale, lessee is to be reimbursed for all unearned rental previously paid."

It is the appellant's contention that said 30 day provision contained in the lease contract was for the exclusive use and benefit of the lessor and owner of the land, and that it could not be used by the lessee as an excuse for terminating the lease as hereinafter stated. That the trial court erred in concluding that J. E. Miller breached the lease contract in such way as to relieve Compton of the further payment of rents under the original lease contract. Points 1, 4 and 9 are briefed together, specifically presenting such contention from different angles.

The lease was for a definite term of five years from November 6, 1939, to November 6, 1944, for the sum of $1700 for the first year and $1456 each year thereafter, payable in semi-annual installments of $728 each in advance. The $1700 payment and the two $728 payments satisfied the rents under the contract until November 6, 1941.

July 6, 1940, J. E. Miller conveyed said land to his father, R. N. Miller. That conveyance was in form a warranty deed and placed of record July 21, 1941, in Foard County. J. E. Miller testified the transaction was a mortgage to enable him to procure financial assistance through his father, but the finding of the court is in effect that same was a conveyance of the title to the land. Be that as it may, the testimony is undisputed that insofar as that transaction (of July 6th) is concerned, neither of the Millers ever gave any notice nor took any steps to dispossess Compton and regain possession of the land as in the lease provided. Both J. E. Miller and Compton so testify. Later the lands, etc., were returned to J. E. Miller.

Compton testified that just before the November 6, 1941, installment of rent fell due he was told by a party named Davis that J. E. Miller had conveyed the land to his father, R. N. Miller, and that prompted by such statement he investigated and found such deed on the records in Foard County. That immediately thereafter he received from R. N. Miller a letter—postmarked November 8, 1941—confirming the July 6th conveyance and stating that he desired to sell the land, and further saying in that letter to Compton:

"If you would be interested in buying it get in touch with me right away. I want to give you the first chance to buy, being you have it leased * * *."

Compton further testified that after finding said deed of record and receiving the above letter from R. N. Miller he did not pay the installment of rent falling due November 6, 1941, and thereafter. When asked about his failure to pay said installments of rent, Compton testified:

"Q. Did you pay him (J. E. Miller) then? If you didn't, why didn't you? A. Because it was deeded over to his Daddy (R. N. Miller.)"

Further on in his testimony and in response to questions by his own attorney Compton testified:

"Q. Would you have given the pasture up down there at all if you hadn't thought this fellow Davis had the right to demand possession of it? A. I sure wouldn't.

"Q. Did that cause you the loss you have alleged in your petition here? A. It sure did.

\* \* \* \* \*

"Q. He told you he had bought it (the leased land) and you turned it over to him? A. Yes, sir.

"Q. You didn't deal with him until he showed you a written contract? A. That is right."

Compton also testified that when Davis informed him about the Miller deed of July 6th, he, Davis, also told him that "he bought the place from Miller's dad." That Davis at that time demanded possession of the land and he yielded same to him (Davis) about November 25, 1941, for a consideration of $200, which was about twice as much as the unearned rental paid in advance. For other reasons for his action in doing so, see Compton's testimony above. Compton also testified that Davis showed him a contract with R. N. Miller for the purchase of the land. That he did not know what became of the contract, and that he saw no deed whatever from R. N. Miller to Davis. That he did not know R. N. Miller's hand writing.

Davis did not appear and testify. His whereabouts were not definitely known, but possibly Mineral Wells. There is no competent evidence that R. N. Miller ever executed a deed to Davis and neither is there any statement, other than that above and properly objected to, that there was any contract by which R. N. Miller, or anyone else, was to convey said lands to Davis. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, pt. 6. Davis' interest in the matter is otherwise unexplained, but, as shown by the record, Compton apparently acted in material respects on Davis' representations.

Compton does not claim that he attempted to communicate with either R. N. or J. E. Miller concerning such claims and representations as were made by Davis, or that he otherwise endeavored to verify the same.

Obviously the transactions with Davis and the representations by the latter did not, under the circumstances of this case, justify Compton in surrendering the possession of the ranch to Davis or in his refusing to pay the balance of the rent to J. E. Miller, or his order.

The original lease was made subject to sale of the land at any time during the life of the lease. The lessee Compton agreed to give "complete possession within 30 days after the sale has been completed and receipt of written notice of such sale, and demand for possession."

The manner for terminating the lease by the lessor or owner is thus clearly expressed and is mandatory and in no other way could the lessor or owner terminate the lease. Until terminated in the way provided, the lessee was not legally disturbed in his right of occupancy and use of the premises for grazing purposes.

It is undisputed that no 30 day notice of sale, written notice, or demand for possession based on the conveyance by J. E. Miller to R. N. Miller was ever given lessee Compton. He affirms such fact. Therefore, as effecting his right to terminate the lease on any such ground, or violation thereof, the rule of law is:

"In the absence of any provision to the contrary in the lease, the established rule is that a sale of the reversion by the landlord does not terminate the tenancy or affect the tenant's rights or obligations. The tenant being in possession at the time of the sale, the purchaser is deemed to have had notice of his rights under the lease, and hence may not claim the standing of an innocent purchaser. The lessee or tenant becomes in contemplation of law the tenant of the purchaser, and may attorn to the latter. The purchaser is entitled to enforce the covenants of the lease—or, at any rate, covenants which 'run with the land.' Thus the grantee of the reversion has a right to declare a forfeiture of the leasehold on proof of a breach of a covenant which was incorporated in the lease con-

tract and which in character is a covenant 'running with the land.'" 27 T.J. p. 67, sec. 18; Wilson v. Beck, Tex.Civ.App., 286 S.W. 315, 321; O'Neil v. Davis, 1 White & W.Civ.Cas.Ct.App. § 415; Davidson v. Wallingford, 88 Tex. 619, 32 S.W. 1030; 16 R.C.L. p. 633, sec. 118, et seq; 35 C.J. p. 1214, sec. 544; p. 1224, sec. 565; p. 1231, sec. 573.

From O'Neil v. Davis, supra, we take the following:

"Where D. leased the pasture from P. for the year, he had a legal right to use it during the year, and a sale by P. of the pasture or a portion of it would not destroy or affect D.'s rights under the lease. Such sale would pass the land subject to the right of pasturage in D., and D. being on the land at the time of such sale, and using it for pasturage, the purchaser would be charged with notice of his rights, and would take the land subject to such rights."

■■■ Without doubt Compton was in actual and visible possession and use of said land for grazing purposes at the date of conveyance to R. N. Miller, regardless of whether that was an outright sale by warranty deed or a mortgage in form of such, as claimed by J. E. Miller. Conceding it to be an outright conveyance to R. N. Miller, then he is deemed to have had notice of Compton's rights under the lease, and he, Miller, could not claim the standing of an innocent purchaser at any time during which the rents are sought to be recovered in this suit. Lester v. Zink, Tex.Civ.App., 154 S.W. 1161. However, it conclusively appears that R. N. Miller had at no time made any such claim or that he in any way manifested a wish or desire that Compton relinquish to him the possession of the land. To the contrary he sought to interest Compton in the purchase of the same, extending him a preference right, as indicated in his above letter. In fact, neither of the Millers at any time sought possession of the land by pursuing the method stated in the lease and providing a way in which the lessor or owner could do so; and it follows that no such provision therein for the benefit of the lessor or owner was available to the lessee Compton. Martin Weiss Co. v. Schwartz, Tex.Civ.App., 295 S.W. 197; Morris v. De-Wolf, 11 Tex.Civ.App. 701, 33 S.W. 556; Brady v. Nagle, Tex.Civ.App., 29 S.W. 943; Collier v. Wages, Tex.Civ.App., 246 S.W. 743.

"Not infrequently, the duration of the lessee's tenure is in effect declared to be dependent upon the giving of notice by one of the parties. Where the lease provides for notice to vacate by the lessor to the lessee, the lessee may not terminate the contract by the giving of notice; the provision is for the lessor's benefit exclusively. 'There is no authority in law authorizing the lessee to take advantage of such a stipulation and appropriate it to his own use in terminating a lease contract which he had agreed to and had omitted to have inserted therein a like provision in his own interest.' Again, where a lease contract contains a proviso that on nonpayment of rent the term shall cease, the lessor, and not the lessee, has the elective right of determining it upon breach. 'The principle that no man is permitted to take advantage of his own wrong, prevents the lessee from doing so.'" 27 T.J. p. 297, sec. 170, 171.

■■■ Further, the following rules of law have application under the fact of Compton's undisputed possession of the land until he abandoned same:

"A provision which is occasionally embodied in leases confers upon the lessee an option to purchase the demised property. Such a provision is not open to attack on the ground that it lacks the elements of a binding contract; and the right conferred thereby may be enforced by a suit for specific performance. One who has purchased the premises from the lessor may be compelled to execute a conveyance to the lessee; nor can the defendant claim the standing of an innocent purchaser, it seems, the lessee's possession of the property being notice of the state of the title and the option conferred by the lease.

 * * * * *

"And where a lease contained a proviso reserving to the lessor the right to sell the land and terminate the lease at the end of any rental year on six months' notice and giving the lessee the privilege of buying the land at a price to be fixed by the lessor, and which might be bona fide offered by any other party, the court held that the option to buy was conditional upon the lessor's electing to terminate the lease by making a sale, and that it did not apply to a sale which was made subject to the lessee's rights to the end of his term." 27 T.J. p. 65, sec. 16.

Applying these rules of law to the undisputed facts of the case, Compton's pos-

session and rights under the lease were never legally impaired or threatened by anything done by the Millers, or either of them, and his abandonment of possession of the premises was voluntary on his part and wholly unwarranted in fact or in law. The law afforded him ample means and methods for asserting and establishing his rights under the terms of the lease if he was longer interested in them. Compton does not seek specific performance or otherwise affirmatively assert any rights under the option in his favor.

 Under the established facts Compton's liability for the unpaid rents, regardless of the owner at any particular time, is reflected by specific rules of law in such cases:

"In the case of a dispute as to the liability of the tenant to pay rental, the primary implication is that he is bound by his agreement to make payment; and, in order to escape liability, he must show facts which lead to the conclusion that he has been released of his obligation. It has been observed: 'Where the rental contract exists by which the tenant is entitled to occupy the leased premises for a given term, and by which the landlord is entitled to receive a fixed rent for the entire term, the tenant cannot resist the demand for rent unless he shows evidence under paramount title, or that for some reason, recognized by law as sufficient, he was entitled to and did quit the possession.' If he relies upon an offer by the landlord to cancel the lease and release him of liability for the payment of the stipulated rentals, he must establish that the offer was accepted. Of course, the obligation of the lessee to pay rental may be contingent.

"If the contract of renting has been abrogated by agreement of the parties, the lessee may not be held liable thereon by reason of the fact that he has occupied the premises. The circumstance that he has never entered into possession of the premises does not relieve the lessee of liability for the stipulated rental. 'It requires no argument to show that a tenant is not released from liability upon his express covenant to pay rent by mere failure upon his part to accept possession of the leased premises.' Nor may he claim any deduction by reason of the fact that he has not occupied the property during the whole period of the agreed term. *And, by abandoning possession of the premises be-fore the expiration of the term, the tenant cannot prejudice the landlord's right to recover the full amount of the rental. 'He cannot defeat the right of the landlord to have the rent become due under the terms of the contract by his own voluntary abandonment of the leased premises.'"* 27 T.J. p. 85, sec. 28. (Italics ours.) Sellers v. Radford, Tex.Civ.App., 265 S.W. 413; Ramsey v. Odiorine, Tex.Civ.App., 210 S.W. 615; Goldman v. Broyles, Tex.Civ. App., 141 S.W. 283.

The testimony further discloses that Miller did not re-enter and take possession of the lands when Compton abandoned them, and what has been said demonstrates Compton had no right to abandon same and did so at his own risk.

 From the record it appears that R. N. Miller reconveyed said land to J. E. Miller, and on August 23, 1943, also assigned and relinquished to him the unpaid rents provided for in the original lease. Thereafter, J. E. Miller, finding a bona fide purchaser for the land and consummating a sale thereof at $5.50 per acre gave Compton notice of such prospective sale to enable him to exercise his option and purchase the land as stipulated for in the original lease. Compton did not exercise his option to then purchase the land, and the same was sold by J. E. Miller to Tom Proctor Hughes, who received a deed therefor from J. E. Miller on February 15, 1944.

No right to avoid the payment of rent accrues to Compton by reason of this transaction and he asserts no such rights by reason of the same. Further notice will not be given to this transaction.

If we are correct in the foregoing conclusions, the evidence establishes Compton's liability for the unpaid rents in suit, with interest thereon from the due date of each installment, and the evidence has been fully developed on said issue. The judgment of the trial court will, therefore, be reversed and judgment here rendered in favor of J. E. Miller for said amounts, and also establishing his rights under the attachment proceeding and replevy bond therein.

For the reasons assigned, the judgment of the trial court is reversed and here rendered for plaintiff J. E. Miller as above indicated and left undisturbed in all other respects. It is so ordered.