**STEWART et ux. v. BASEY et al.**

No. 9967.

Court of Civil Appeals of Texas. Austin.

May 30, 1951.

Rehearing Denied July 18, 1951.

E. M. DeGeurin, Austin, for appellants.

Smith & Furr, W. R. Smith, Jr., Austin, for appellees.

GRAY, Justice.

By a written contract appellants leased to appellee three store buildings identified as 1200, 1202 and 1204 South Congress Avenue, in the City of Austin. The lease was for a term of five years beginning January 1, 1949, and ending December 31, 1954, and provided for a monthly rental of $325 per month, payable each month in advance.

Among others, the lease contract contained the following provisions:

"* * * The failure to pay any monthly installment of rental when such installment is due shall terminate this lease at the option of lessors. The failure of lessee to make said payment or payments or the breach of this contract otherwise by him shall render him liable to lessors, as agreed liquidated damages, the sum of One Hundred Fifty (150.00) Dollars per month for each and every month of the unexpired term of this lease which shall become due and payable when the option to terminate this lease is exercised or at the time of the breach of this contract otherwise by lessee if any, and the payment thereof be secured by lien on the property of lessee in said store buildings at said time.

\* \* \* \* \* \*

"That the violation of any term of this lease by either party hereto shall terminate the same at the option of the other."

Appellee went into possession of the store buildings and continued to pay the monthly rentals through October 1949. Some time in September or October 1949, appellee advised appellants he was going to move and, afterwards, did vacate the

buildings. After some negotiations between the parties, appellee paid appellants the rental for the month of November 1949, and then told appellants he was going to disregard the contract and would suffer the consequences. Afterwards, the keys to the buildings were delivered to appellants through attorneys.

Appellants sued for the stipulated liquidated damages, and, in the alternative, for actual damages.

Upon a nonjury trial the court rendered judgment for appellants for $38.50 as damages to the buildings caused by the destruction of a partition door, but denied all other relief.

Findings of fact and conclusions of law were filed. Among other findings the trial court found:

"7. Lessee moved from the leased premises during the early part of November 1949; that E. C. Stewart, one of the plaintiffs herein, after he had been advised that the defendant was not going to pay any further rentals other than those for the month of November, permitted the premises to remain in the hands of defendant until on or about December 5, 1949, at which time the plaintiff, E. C. Stewart, demanded the defendant to return the keys to the building to him.

"8. * * * that the entire premises remained vacant from December 1, 1949, until February 15, 1950, on which latter date the plaintiff leased a portion of said premises under a written contract of lease, * * *.

"9. That the lessors, E. C. Stewart and wife, Jennie Eck Stewart, leased the premises known as 1200 and 1202 South Congress Avenue, Austin, Texas, and in addition thereto two four-room apartments and a large iron safe located in said building to the Royal Order of the Eagles, said lease contract beginning on March 1, 1950, and terminating February 28, 1955; * * *.

"11. Lessors have had possession and control of said leased premises to the exclusion of lessee from the time the said keys were delivered to them by said lessee, and as between lessors and lessee the lessors have retained exclusive possession and control of said premises since the date lessors demanded and received the keys from lessee.

"12. Lessors did take exclusive possession and control of said premises upon the delivery of said keys and that lessors have retained exclusive possession and control thereof since that date.

"13. It was the intention of the lessors in demanding the keys of said lessee to take exclusive possession and control of said premises to the exclusion of lessee.

"14. That lessors elected, and did elect, to rescind and terminate said lease contract as per their option to do so contained in said lease contract, and that when lessors released the premises, lessors did so for lessors' own benefit and not for the benefit of lessee.

"15. That said lessee surrendered all of his rights in and to said premises and property to said lessors, and said lessors accepted said leased premises and property with the intention of accepting such surrender of said lessee.

"16. That by the termination of said contract by lessors, it was the intention of lessors that said lessee was to be discharged from any other further liability to said lessors after November 1, 1949, except as per the liquidated damages clause in said lease contract, and for cost of restoring said buildings to their prior conditions less normal wear and tear.

"17. I further find that the plaintiffs and the defendant by their respective attorneys agreed upon the trial of this cause that the difference between the amount of rental payments accruing to the plaintiffs by reason of the leases to the Royal Order of the Eagles and the Austin Neon Advertising Company, and the rental payments which would have accrued under the lease agreement between the plaintiffs and the defendant herein were ascertainable from a mere reading of the respective *lessees.*"

The conclusions of law of the trial court material here are:

"1. I conclude as a matter of law that under the provisions of the lease contract that upon the failure of the defendant and lessee to pay the rent due for the month of

December 1949, the plaintiffs and lessors had the right to terminate said contract, and did terminate such contract, and exercised their option to terminate such contract, by demanding the keys of said lessee, by entering into possession and control of the premises to the exclusion of the lessee.

"2. I conclude as a matter of law that it was the intention of the lessors to release said lessee from any liability to them for future rents, or future damages, after said contract was terminated except insofar as the liquidated damages feature of the contract was applicable.

"3. I conclude as a matter of law that the provision for liquidated damages contained in the lease contract cannot be collected for such provision is a penalty.

"4. I conclude as a matter of law that lessors and plaintiffs having elected to terminate the contract and repossess themselves of the leased premises and are precluded from standing on the contract and collecting rentals or damages for failure to pay rentals thereunder, under the lease contract and the facts in this case.

"5. I conclude as a matter of law that the acts and conduct of lessors amounted to an acceptance of the surrender of the premises by lessee by operation of law.

"6. I conclude as a matter of law that the acts and conduct of said lessors and lessee amounted to an implied agreement to terminate said contract by operation of law, and thereby relieve lessee of further liability thereunder, except for necessary repairs to restore said buildings to their prior condition and except as to liquidated damages provided for in said lease, which liquidated damages cannot be collected as a matter of law."

By appellants' pleadings they sought a recovery of liquidated damages and had the burden of proving that it was the intention of the parties in making the contract to provide for liquidated damages. Sanders Nursery Co. v. J. C. Engelman, Inc., Tex.Civ.App., 109 S.W.2d 1131, Er. Dis.; J. C. Engelman, Inc., v. Sanders Nursery Co., Tex.Civ.App., 140 S.W.2d 500, 510, Er. Ref.; Linberg v. Finks, 7 Tex.Civ.App. 391, 25 S.W. 789, 791, Er.

Ref. And the question is to be determined by the nature of the contract, its terms, the consequences that would arise from its breach and the circumstances of the transaction. Palestine Ice, Fuel & Gin Co. v. Walter Connally & Co., Tex.Civ.App., 148 S.W. 1109, Er. Ref.; Ferguson v. Ferguson, Tex.Civ.App., 110 S.W.2d 1016.

The testimony relating to the making of the lease contract was: the contract itself and the testimony of appellant E. C. Stewart, who testified in person and by deposition taken before the trial. Appellee did not testify and neither did Mrs. Stewart. E. C. Stewart testified that prior to making the contract sued on, appellee had a lease for three years on store buildings 1200 and 1202; that the rental was $175 per month, and that that lease contained a clause providing for liquidated damages at $75 per month, in the event of a breach. This lease was prepared by appellants' attorney who put the liquidated damage clause in it, and "that was his (the attorney's) idea to put it in there." That later another store building (1204) was leased to appellee and the contract in question was made, and as to the making of this contract he said:

"A. The first lease we had with Mr. Basey on the first property, on 1200 and 1202 called for $75.00 a month liquidated damages in event of breach of the contract. In rewriting the contract, we took the matter into consideration and thought it out that it was almost doubling the amount of rental and the premises, so we doubled the amount of the liquidated damage in the contract.

"Q. Did you call that provision, that change to the attention of Mr. Basey? A. I did, yes, sir.

"Q. Before he signed the contract? A. Yes, sir.

"Q. What did he say? A. I don't recall his remarks, but he signed it understanding—we went through it at our office before we ever went to McBee's court, or the Justice of the Peace, to sign it, and told him at the time that was the only change other than the difference in rent price, that had been made in the lease contract and the former one, that they were identical con-

tracts with the exception of the amount of rent and the buildings that it covered and the liquidated damages, which covered the biggest part of the contract, covered the contract, you might say."

By deposition E. C. Stewart testified:

"Q. Mr. Stewart, you and Mr. Basey, you say, had in your lease contract a provision for $150 a month for liquidated damages? A. Yes, sir.

"Q. How did you arrive at that figure, Mr. Stewart? A. Well, of course, that is a question I don't know whether I can answer or not, as I am not an attorney, and I don't know what would be the legal part of it. I had the lease drawn by an attorney, Mr. Edwin H. Yeiser, who had handled a lot of business for us, and in this contract that he drew for us he put in this contract this liquidated damage clause in there.

"Q. And that was his idea to put it in there? A. That was his idea to put it in there. He has always represented us in a legal capacity; and naturally if you have a lawyer you expect him to take care of you in the best way he sees fit and also be fair.

\* \* \* \* \* \*

"Q. How did you determine whether it would be $150, or $75, or $25? Did you discuss it with Mr. Basey? A. Yes, we did. I will tell you how it happened. Mr. Basey had a lease on 1200 and 1202 South Congress before he took the lease on the entire property, and that lease had run, I would say, nearly two years. He had a three-year lease on it, and Mr. Yeiser had written that lease and he put a $75.00 liquidation damage clause in that lease; and when Mr. Basey took over the balance of the property, Mrs. Stewart, my wife, wrote up the lease from a copy of the original lease we had, and it being a matter of about twice the amount in the original lease we doubled the amount of liquidated damages and put in $150.00; and when Mr. Basey took the lease and examined it—I don't know who he had to examine the lease, whether anyone or not—but he brought it back and before he went off with it again we told him that the only change that was made in the lease covering the two buildings

was the difference in the liquidated damages, the first one calling for $75.00, and it had been increased to $150.00 for the three buildings, and he said that was perfectly all right."

In Sanders Nursery Co. v. J. C. Engelman, Inc., supra [109 S.W.2d 1133], the court said: "Where the damages for the breach of a contract are uncertain and difficult of proof under the established rules of law, the court will infer that the parties intended the sum named to be liquidated damages. Durst v. Swift, 11 Tex. 273, 281; [City of] Indianola v. Gulf [W. T. & P.] Railroad Co., 56 Tex. 594, 606; Harris County v. Donaldson, 20 Tex.Civ.App. 9, 48 S.W. 791; City of Marshall v. Adkins, 60 Tex.Civ.App. 336, 127 S.W. 1148, 1151. On the other hand, where the damages are easily ascertained under the ordinary rules of law, the sum named will be declared a penalty, unless a contrary intention clearly appears. Eakin v. Scott, supra [70 Tex. 442, 7 S.W. 777]. Where the amount stated as 'liquidated' is out of proportion to the actual damages sustained, the court will consider the contract and the surrounding circumstances and generally declare the amount named to be a penalty. Collier v. Betterton, supra [87 Tex. 440, 29 S.W. 467]; Jennings v. Willer (Tex.Civ.App.) 32 S.W. 24, 27. Where the amount named is out of proportion to the actual damages, that is, where the actual damages clearly exceed the amount named, the court will look to the contract and surrounding circumstances and generally construe the amount named to be a penalty. A recovery for actual damages will be allowed, although such damages exceed the penalty named. Palestine Ice [Fuel & Gin] Co. v. [Walter] Connally & Co. (Tex.Civ.App.) 148 S.W. 1109 (writ refused)."

■ Upon a breach of the contract before us the damages for such breach are neither uncertain nor difficult of proof, but may be ascertained under the ordinary rules of law. Upon a breach by appellee, appellants had either of two remedies: (1) sue for payments of the rents provided for in the contract, or (2) take possession of the buildings and sue for their damage, which would be the difference between the rent

contracted for and that received. Marathon Oil Co. v. Rone, Tex.Civ.App., 83 S.W. 2d 1028, Er. Ref.; Barret v. Heartfield, Tex.Civ.App., 140 S.W.2d 942, Er. Ref.; Willis v. Thomas, Tex.Civ.App., 9 S.W.2d 423, Er. Dis.

From our examination of the entire record before us, we have concluded: (1) that it can not be reasonably inferred that the parties, by a fair calculation and adjustment, ascertained the amount of damages which would accrue by reason of a breach of the lease contract, and (2) that such damages are neither uncertain nor difficult of proof, for which reasons the trial court did not err in holding the contract provided for a penalty and not liquidated damages.

The evidence is undisputed that appellee first talked to appellants about moving out of the buildings in September or early October of 1949; that he then wanted to know if he could make some kind of settlement so he could move out and get released from his contract, and that he offered to pay $750. Appellants told him they could not consider anything like that at that time. About two weeks later appellee phoned appellants and said, "I am coming out of here." "I am going to move." Around November 1, 1949, appellee had already moved, appellants' son called for the rent, and appellee said he wanted to talk to appellant E. C. Stewart, who went to see appellee, and appellee paid the rent for November and said: "I am going to pay you a month's rent for November." "That is going to be all."

"Q. What did you say to him? A. Well, I said, 'Are you going to disregard your contract with me?' And he said. 'I am.' I said, 'You are going to suffer the consequences then,' and he said, 'I will.'"

On the morning of December 5, 1949, appellants' attorney called appellee's attorney and said appellants wanted the keys to the buildings. On that day the keys were delivered to the office of appellants' attorney. After the keys were delivered appellants listed the buildings with an agent for lease and posted "for rent" signs in the windows. Thereafter lease contracts were executed: for store building 1204, beginning February 15, 1950, and for store buildings 1200 and 1202, beginning March 1, 1950.

Appellee asserts no claim of right to possession of the buildings, but claims his liability for rents has been terminated.

In order for there to be a termination of a lease contract or a surrender thereof, it must be by the mutual agreement of the lessor and the lessee,—that is there must be a meeting of the minds. Barret v. Heartfield, supra; Early v. Isaacson, Tex.Civ.App., 31 S.W.2d 515, Er. Ref.; 27 Tex.Jur., p. 312, Sec. 183. Upon conflicting evidence this was an issue for the trier of the facts. Barret v. Heartfield, supra; Marathon Oil Co. v. Rone, supra; Cannon v. Freyermuth, Tex.Civ.App., 4 S.W.2d 84, with the burden on appellee to introduce evidence showing appellants accepted the surrender of the premises with the intention to release appellee from further liability under the contract. Walton v. Steffens, Tex.Civ.App., 170 S.W.2d 534, Er. Ref. W. M.; Drollinger v. Holliday, Tex.Civ.App., 117 S.W.2d 562; Miller v. Compton, Tex.Civ.App., 185 S.W.2d 754.

There is no conflict in the evidence. Under the terms of the contract appellants and not appellee had the right to terminate the contract for nonpayment of rent. The evidence shows that appellee first asked appellants for a settlement and a release; appellants refused the offer; afterwards appellee called and said he was moving; that he did move; that later he paid one month's rent and said he would not pay any more; that he then said he was going to disregard the contract and would suffer the consequences. Under these circumstances appellants could resume possession and relet the premises. Barret v. Heartfield, supra; Robinson Seed & Plant Co. v. Hexter & Kramer, Tex.Civ.App., 167 S.W. 749, Er. Ref.; 27 Tex.Jur., p. 314, Sec. 184.

The evidence conclusively shows that appellee, without the consent of appellants, abandoned the buildings, moved his goods out and told appellants he was going to disregard the contract. He thus signified his intention not to return to the buildings. It is true that the keys were not tendered

to appellants, and that they were delivered after request was made. However, this fact, when considered in connection with the other evidence and the right of appellants to reenter and relet the premises upon their abandonment by appellee, would not warrant a finding of acceptance of the surrender and a termination of the contract, there being no words or acts on the part of either the appellants, or the appellee, that the request was made as, or the keys delivered on condition of, an acceptance of surrender and termination. Peticolas v. Thomas, 9 Tex.Civ.App. 442, 29 S.W. 166.

Appellee cites Collier v. Wages, Tex.Civ. App., 246 S.W. 743, 745, 746, in support of the holding of the trial court that the demand for the keys and their delivery constituted a surrender and termination of the lease contract. The lease contract and the facts under consideration in that case are distinctly different from the lease contract and the facts here. The contract there provided that if the rent or any part thereof shall remain unpaid for five days, "then it shall be lawful for said lessors or their agents, assignees or heirs without notice or demand, into said premises to re-enter, and the same to have again, repossess and enjoy as in their first and former estate; and thereupon this lease, and everything therein contained on said lessors' behalf to be done and performed, shall cease, determine and be utterly void." The rent was not paid and after the lapse of five days the lessor demanded the keys and they were delivered. The court noted the trial court's conclusions of law were based upon all the findings of fact which were inclusive of the above quoted portion of the lease contract, and said: "After the defendant had defaulted in payment of the rental due on July 18, 1921, for more than five days after its due date, the action of the plaintiffs, in intentionally repossessing themselves of the premises with full knowledge of that provision in the lease, warranted the conclusion reached by the trial judge that plaintiffs should therefore be held to have elected to rescind the contract and terminate any liability on the part of the defendant for rentals thereafter. To hold otherwise would be to ignore the plain terms of the provision in the lease contract quoted above, the binding force of which has not been attacked in any manner by the plaintiffs."

[redacted] Because of the difference in the lease contract and the facts in Collier v. Wages, supra, and the lease contract and the facts before us, we think the holding there is not decisive of the questions here. In their brief appellants say that the premises were relet upon the best terms and conditions available, and that the actual damages suffered by them by reason of appellee's breach of his contract amounts to the sum of $3,331. Appellee does not challenge these statements and we accept them as correct. Rule 419, Texas Rules of Civil Procedure.

[redacted] The judgment of the trial court awarding appellants damages in the sum of $38.50, and denying appellants a recovery of liquidated damages is affirmed, otherwise it is reversed and judgment is here rendered that appellants recover of appellee their actual damages in the sum of $3,331, interest and costs.

Affirmed in part and in part reversed and rendered.

HUGHES, Justice (concurring).

I agree that the provision for liquidated damages is invalid, but not for the reasons stated in the opinion of Judge Gray.

The general rule in the event a tenant abandons the premises and refuses to pay the agreed rents being that the landlord need make no effort to relet the premises and may recover, as his damages, the full amount of such rents, I cannot think of any reason for holding that an agreement that the tenant should pay *less* than the full amount of the recoverable damages penalizes the tenant.

In his work on Damages, Judge McCormick states:

"If the exact amount of damages which a court or jury would give is certainly predictable, there is little reason for at-

tempting to agree on the amount in advance, unless the parties wish to change the legal standard of recovery. (P. 603.)

* * *

"A survey of the rules by which unliquidated damages are measured will disclose how few and limited are the cases where, as a practical matter, it is possible to foretell with any exactness the precise amount or within a narrow range the approximate amount of damages to which the injured party will be entitled in the event of breach. It may be done in one case; that is, where the promise whose breach is anticipated is a promise to pay money. The law here limits the damages to legal interest, but within the range of the lawful maximum even here the damages, i. e., the interest collectible for detention of the money after maturity, may be stipulated, and this seems a true case of liquidated damages." (P. 604.)

I see no distinction between the agreement here and the agreement to pay less than the rate of interest (damages) allowed by law for the retention of money.

As long as we have the vicious rule that landlords need make no effort to minimize the damages, as other litigants are generally required to do, agreements of the kind involved here should be regarded with great favor.

I believe the liquidated damage clause in the present lease to be unenforceable only because it applies to numerous and minor covenants of the lease as to some of which the amount of damages agreed upon is clearly disproportionate to the amount of anticipated damages. 15 American Jurisprudence, page 686.

### On Appellee's Amended Brief and Motion for Rehearing.

GRAY, Justice.

 With permission of the court, appellee has amended his brief and now challenges the correctness of appellants' statement that the amount of the damage suffered by them, by reason of appellee's breach of his lease contract, is $3,331.

This amended brief is submitted in support of appellee's motion for rehearing.

The lease contract, dated February 15, 1950, whereby appellants leased store buildings 1200 and 1202, includes property not included in the lease contract with appellee. As to such property the contract provides: "The leased premises herein let consist of the two lower stories and two of the four room apartments known as 'A' and 'B' which are situated on the floor immediately above 1202 South Congress Avenue in the east end of the building. Lessee is also to have exclusive use of the large Iron Safe situated in the back room of the store designated as 1202 South Congress Avenue during the entire term of this lease or any extention thereof."

The contract provides for a total rental to be paid for the store buildings, the apartments, and the iron safe, and we find no apportionment of the rentals in the evidence, for which reason we are unable to determine the amount of damages sustained by appellants.

The agreement of the attorneys referred to in the trial court's finding of fact No. 17 set out in our original opinion has not been made known to us and we are unable to base any judgment thereon.

Appellee argues that because of its recital of its beginning and ending dates the lease contract with him is a six-year lease. The parties have treated the same as a five-year contract. The trial court was not called on to interpret the contract, and no point is here presented authorizing us to construe it in any manner other than as it has been treated by the parties.

Appellee's motion for rehearing is granted to the extent that our judgment awarding appellants a recovery of $3,331 is set aside and the cause is now reversed and remanded to the trial court for the sole and only purpose of determining the amount of damages sustained by appellants by reason of appellee's breach of his lease contract. In all other respects the motion for rehearing is overruled.

Motion granted in part and in part overruled.